IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| CEDAR RAPIDS LODGE & SUITES, LLC and JAMES T. RYMES, RHONDA COBORN, MICHAEL COBORN, SCOTT SHISLER, JULIE SHISLER, PAMELA J. COBB REVOCABLE TRUST, RAYMOND MULFORD, THERESA A. MULFORD, JACOB SAILER, RONALD SAILER, and JERRED RUBLE By direct action in their individual capacities,<br><br>Plaintiffs,<br><br>vs.<br><br>JFS DEVELOPMENT, INC. (f/k/a JCS DEVELOPMENT INC.), JOHN F. SEIBERT, TED VOSBURG, MARC GABRIELSON, and LIGHTOWLER JOHNSON ASSOCIATES, INC.,<br><br>Defendants. | No. C09-0175<br><br>REPORT AND RECOMMENDATION |

## TABLE OF CONTENTS

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  ISSUE PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.    DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      A.   *Is Prejudgment Attachment Available on These Claims?*. . . . . . . . . . 5

    B.    *Would Prejudgment Attachment Violate Defendants' Due Process Rights?* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    C.    *Defendants' Other Arguments.* . . . . . . . . . . . . . . . . . . . . . . . 18

VI.    SUMMARY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VII.   RECOMMENDATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I. INTRODUCTION

On the 4th day of February 2010, this matter came on for hearing on the Petition to Attach (docket number 13) filed by the Plaintiffs on January 20, 2010; the Motion to Dismiss Petition to Attach (docket number 29) filed by Defendants John F. Seibert and JFS Development, Inc. on February 3, 2010; and the Motion to Quash and Dismiss Petition for Attachment (docket number 32) filed by Defendants Ted Vosburg and Marc Gabrielson on the same date.

The Plaintiffs were represented by their attorneys, Robert H. Miller, Kevin J. Visser, and Eric W. Lam.[1] Defendants JFS Development and Seibert were represented by their attorneys, Brad J. Brady and Matthew L. Preston.[2] Defendants Vosburg and Gabrielson were represented by their attorneys, Kevin H. Collins and Sarah J. Gayer.

## II. PROCEDURAL HISTORY

On December 3, 2009, Plaintiffs filed an 86-page Complaint (docket number 1) seeking monetary damages and declaratory judgment. The 18-count Complaint arises from the development of an AmericInn motel in Cedar Rapids, Iowa. Plaintiffs claim, among other things, that Defendants fraudulently induced them to invest in the project.

On February 9, Defendants Vosburg and Gabrielson filed a 109-page Answer (docket number 40) denying the material allegations and asserting 43 affirmative defenses.

---

[1] Also appearing at the time of hearing were Plaintiffs James T. Rymes, Rhonda L. Coborn, Michael Coborn, and Scott Shisler.

[2] Defendant John F. Seibert appeared personally at the time of hearing.

On the same date, JFS Development and Seibert filed a 130-page Answer and Counterclaim (docket number 41) denying Plaintiffs' allegations and asserting a 4-count counterclaim. Defendant Lightowler Johnson Associates, Inc. filed its Answer (docket number 42) on February 12, 2010.

Meanwhile, on January 20, Plaintiffs filed the instant Petition to Attach. Plaintiffs ask that the Court order a writ of attachment, thereby placing a lien on all of Defendants' assets, including real property, vehicles, and bank accounts.[3] Defendants responded with their respective motions to dismiss and quash, asking that Plaintiffs' Petition to Attach be denied and dismissed. At the time of hearing, all parties agreed that the matter was properly submitted to the undersigned Magistrate Judge for a report and recommendation to the district court.

### III. ISSUE PRESENTED

The issue presented by the Petition to Attach is whether Plaintiffs are entitled to prejudgment attachment of Defendants' interests in real estate, financial accounts, vehicles, and other personal property.

### IV. RELEVANT FACTS

This action arises from the development of an AmericInn motel in Cedar Rapids, Iowa. Defendant John F. Seibert, a Minnesota resident, is a principal in JFS Development, Inc., a Minnesota corporation engaged in hotel management. Defendants Ted Vosburg and Marc Gabrielson are Iowa residents. Seibert, Vosburg, and Gabrielson were "founding governors" in the Cedar Rapids project, which was incorporated as Cedar Rapids Lodge & Suites, LLC. ("CRLS"). The individually-named Plaintiffs are investors in CRLS.

The Cedar Rapids project has not been profitable. Plaintiffs claim that they were induced to invest "through a series of material fraudulent misrepresentations and

---

[3] Defendant Lightowler did not appear at the hearing. The Petition to Attach does not seek to attach any assets belonging to Lightowler.

omissions" by Defendants. Plaintiffs blame the project's failure on Defendants' fraud, self-dealing, and mismanagement. Defendants vigorously deny Plaintiffs' claims. Defendants concede that the hotel has under-performed, but generally attribute the problems to a poor economy. This is not the time to resolve that dispute.

## V. DISCUSSION

Plaintiffs ask that the Court order a writ of attachment issue against Defendants' interests in real estate, financial accounts, vehicles, and other personal property, pursuant to Iowa Code chapter 639. Attachment pursuant to Iowa Code chapter 639 is intended to be a summary proceeding. *See Farmers Nat. Bank v. Manke*, 500 N.W.2d 19 (Iowa 1993). That is, the Court does not test the truth of Plaintiffs' allegations in support of the attachment. *Id.* at 20. If the statements are not true, and if Plaintiffs had no reasonable grounds to believe otherwise, then Defendants may recover for wrongful attachment. *See* Iowa Code §§ 639.14-.15. *See also Rockport Co. v. Wedgewood, Inc.*, 447 N.W.2d 126, 128 (Iowa 1989).

Plaintiffs argue pursuant to Iowa Code section 639.3(1), that they are entitled to attach the assets of JFS prior to judgment, because it is a "foreign corporation." Similarly, Plaintiffs seek prejudgment attachment of Seibert's assets because he is a "nonresident of the state." *See* § 639.3(2). Regarding Vosburg and Gabrielson, Plaintiffs argue that their claim "is due for property obtained under false pretenses" and, therefore, they are entitled to prejudgment attachment pursuant to section 639.3(12).

Defendants resist Plaintiffs' request for prejudgment attachment on several grounds: first, they argue that since this case sounds in tort, attachment pursuant to Iowa Code chapter 639 is unavailable. Second, Defendants argue that attachment under these circumstances violates their right to due process, citing *Connecticut v. Doehr*, 501 U.S. 1 (1991). Defendants also argue that the Petition was not sworn, improperly pleads the causes for attachment in the alternative, and seeks to attach property outside of the state

4

of Iowa. Defendants also object to Plaintiffs' request that they be permitted to submit letters of credit to the Court in lieu of bond.

### A. Is Prejudgment Attachment Available on These Claims?

Plaintiffs' Complaint is brought in 18 counts. In brief, Plaintiffs claim RICO violations, mismanagement, negligence, fraud, breach of fiduciary duty, violations of the "Consumer Fraud Act," and waste and/or misappropriation. Plaintiffs seek an accounting, declaratory judgment, and damages.

Defendants argue that prejudgment attachment is not available in actions sounding in tort, citing the recent case of *Lyon v. Heemstra*, 2010 WL 200454 (Iowa App.). There, an action was brought for wrongful death after the defendant shot and killed the plaintiff's decedent. The issue presented was whether a judgment lien of the intervenor – Wells Fargo Bank – had priority over the plaintiff's writs of attachment. In concluding that the bank's judgment lien was superior, the Court found that "the writs of attachment were improperly granted in the first instance." *Id.* at *2. The Court first recognized that the right to prejudgment attachment "is not limited to contract." *Id.* (citing Iowa Code § 639.8). Nonetheless, citing 150-year-old precedent, the Court concluded that "in Iowa, pre-judgment attachment has not been recognized in a tort action" (citing *Raver v. Webster*, 3 Iowa 502, 511-12 (1856)) and specifically found that "[t]he Estate did not have a right of attachment in this wrongful death action." *Id.* at *3.

Plaintiffs argue that *Heemstra* was wrongly decided. First, Plaintiffs contend that the *Heemstra* decision "is contrary to the plain language of Iowa Code § 639.8," which establishes a procedure for determining an "allowance of value" when the "demand is not founded on contract."[4] The language in section 639.8 suggests that there must be times

---

[4] Iowa Code section 639.8 states:
> If the demand is not founded on contract, the original petition must be presented to some judge of the supreme or district court, or the judge of the court from which the issuance of a

(continued...)

5

when a demand for attachment "is not founded on contract." At the time of hearing, Plaintiffs argued that if pre-judgment attachment is not available in a tort action – as indicated by the Court in *Heemstra* – then it "will completely write [section] 639.8 out of the Iowa Code." Defendants argue, however, that the decision in *Heemstra* is not inconsistent with Iowa Code section 639.8, because there are claims which are "not founded on contract" and are not torts. For example, a claim may be founded on a promissory note or other "debt instrument." As Defendants note, *Heemstra* does not say that pre-judgment attachment is unavailable in *all* non-contract actions, it states instead that pre-judgment attachments have not been recognized in tort actions. *See Heemstra*, 2010 WL 200454 at *2.

In reaching its conclusion, the *Heemstra* court quoted at length the opinion in *Raver v. Webster*, 3 Iowa 502, 511-12 (1856). *Raver* was an action on an attachment bond. Webster had sued Raver, seeking "to recover damages for the alleged wrongful and fraudulent act of Raver," and obtained a pre-judgment attachment. 1856 WL 251 at *3. After Webster's initial claim failed, Raver then sued on the bond, claiming wrongful attachment. The principal issue submitted to the Iowa Supreme Court was whether the district court erred in excluding testimony regarding admissions by Raver. The Supreme Court concluded that the testimony was admissible and, therefore, remanded the case for further action. The Court then addressed certain issues which "may arise in a subsequent trial." *Id.* at *6.

Specifically, the trial court in *Raver* instructed the jury that Webster's "affidavit set forth no sufficient cause for an attachment, for the reason that the provisions of this amendatory law, applied alone to actions founded on contract." *Id.* at *7. In concluding the instruction was properly given, the Iowa Supreme Court stated that "while the question

---

[4](...continued)
    writ of attachment is sought, who shall make an allowance thereon of the amount in value of the property that may be attached.

is not entirely free from doubt, yet we think, the spirit, if not the strict letter of the law, favors this ruling." *Id.* The Court then embarked on the discussion quoted in *Heemstra*. As noted, the Court in *Raver* stated that "we are not disposed to extend [the attachment law's] provisions in actions for torts, beyond what may clearly seem to be its intention and purpose." *Id.* The Court opined that the attachment law "contemplates that the claim sued on shall be liquidated or ascertained, or one which is susceptible of being rendered certain, without the judgment of a court." *Id.* The quoted language weighs against the issuance of an attachment in the instant case.

In a portion of the decision not cited by *Heemstra*, however, the Court in *Raver* also seemed to suggest that under certain circumstances an attachment may be appropriate in a tort action:

> Now, we suppose, that this law was intended *primarily* to meet a class of cases of the following character: The creditor has a known and undisputed debt against his debtor. It is due, and should be paid. His debtor has money or property, with which he can, if so disposed, either pay or secure this debt; he is appealed to for this purpose, and refuses. The law then says, in effect: this debt you are able to, and ought to pay, or at least secure; you refuse to do either; and your creditor upon making affidavit to that effect, may secure himself by attachment. We say, we think, this was the *primary* intention of the law. In its application it may, and we think, does include those cases of contract, where there may be dispute as to the amount due. And so there may be cases in tort, where the amount to be paid could be ascertained with perhaps less difficulty, than others founded on contract. But such would be exceptions--the rule is certainly the other way. And while there may be difficulties in applying the law to *all* actions founded on contract, which would not arise in *some* actions for torts, we nevertheless think, that as a *rule*, it was intended to apply to the one, and not the other.

*Raver*, 3 Iowa 502, 1856 WL 251 at *8. (emphasis in original) Thus, the *Raver* court seems to suggest that while "as a rule," prejudgment attachment will primarily be

applicable in contract actions where the debt is "known and undisputed," there may be some tort cases in which it may apply.

Adding to the muddle is another Iowa Supreme Court case from 1856: *Johnson & Stevens v. Butler*, 2 Iowa 535, 1856 WL 129. There, the defendant brought a replevin action against a third party in Illinois. The third party recovered judgment against the defendant, however, for detention of the goods. The third party then assigned the judgment to the plaintiffs, who then sued the defendant on the judgment in Iowa. The plaintiffs also obtained an attachment on the ground that the defendant was not an Iowa resident. In addressing the issue of whether an attachment was proper, the Court opined that "the words 'not founded on contract,' refers to the class of actions for torts." 1856 WL 129 at *8. Nonetheless, the Court held that attachment is only proper when there is a "fair assurance" of the amount due.

> The sense of this, and that of the former law, are the same; intending, that if the cause of action were such as to furnish some definite criterion of amount, such as is found in what are commonly called debts, this should form the guide for the attachment. And this class furnishes another important element, also--the fair assurance that something is due; whilst, on the other hand, all of that class which rests in damages alone, purely and strictly as damages, and not at all as debts, and which are altogether uncertain and unfixed, until ascertained by a verdict and judgment, require a special allowance.
>
> But when a judgment has been recovered for a tort, it then is fixed and certain. It is a debt, as much as if it were recovered upon a promise. . . .

*Id.* While the plaintiffs' action in Illinois was based on tort, since it had been reduced to judgment in Illinois and the plaintiffs were suing to enforce the judgment in Iowa, attachment was proper.

> In conclusion, we feel clear that the intent of the Code, like that of our former laws, is to distinguish between those demands which are *ex delicto*, and totally uncertain and

> indefinite, and those which are classed as *ex contractu*, and contain in themselves, something specific as to the amount, and we think the court erred in quashing the attachment.

*Id.* at *9. Thus, *Johnson* also appears to support the general rule that attachment is appropriate in those cases where there is a fair assurance that something is due and the damages are relatively easily ascertained, while attachment is generally unavailable when the claim is uncertain and indefinite.[5] *Johnson* serves as an example of a case where attachment is authorized as a claim "not founded on contract," but neither based on tort.

Plaintiffs in the instant action argue that *Heemstra* should be disregarded for another reason: It allegedly misstates prior Iowa precedent. The Court in *Heemstra* stated that "in Iowa, pre-judgment attachment has not been recognized in a tort action." *Heemstra*, 2010 WL 200454 at *2. That broad statement seemingly disregards the holding in *Stoller Fisheries, Inc. v. American Title Ins. Co.*, 258 N.W.2d 336 (Iowa 1977). There, an Iowa corporation brought an action against a foreign corporation for alleged tortious interference with a prospective economic advantage. The plaintiff paid a sum of money to the clerk of court in satisfaction of an earlier judgment entered in the defendant's favor, but on the same date that it paid the judgment, the plaintiff filed the new action for tortious interference and "attached the money it paid into court by following the procedures set forth in chapter 639, The Code." *Id.* at 339. That is, a prejudgment attachment was utilized in a tort action. On appeal, however, the Iowa Supreme Court was not confronted with the issue of whether a prejudgment attachment is properly available in an action for tortious interference with a prospective business advantage. Instead, it addressed the issue of whether chapter 639 unconstitutionally violated the defendant's right to due process. Plaintiffs also cite *Baxter v. United Forest Products Co., Inc.*, 406 F.2d 1120 (8th Cir. 1969), for the proposition that prejudgment attachment is available in a tort action. Again,

---

[5] The Court notes parenthetically that the quotation found in Seibert's brief, which he attributes to the Iowa Supreme Court, is actually part of the appellant's argument. *See* Brief of John F. Seibert at 5 (docket number 29-2 at 6).

however, the direct issue of whether prejudgment attachment is available in Iowa in a tort action was not addressed by the Eighth Circuit Court of Appeals. Rather, in determining whether the district court had properly sequestered funds pursuant to FEDERAL RULE OF CIVIL PROCEDURE 64, the Court noted the procedure for attachment in Iowa in non-contract actions. *Id.* at 1124-25.[6]

More than 150 years ago, the court in *Raver* wrote that the issue of whether prejudgment attachment is available in tort actions "is not entirely free from doubt." *Raver*, 1856 WL 251 at *7. It still isn't. Nonetheless, I conclude that the prejudgment attachment procedure set forth in Iowa Code chapter 639 is not available in actions sounding in tort. *Heemstra* states unequivocally that "in Iowa, pre-judgment attachment has not been recognized in a tort action." 2010 WL 200454 at *2. While Plaintiffs are critical of the *Heemstra* court's conclusion in this regard, it nonetheless represents the latest statement of Iowa law.[7] The Court concludes that the procedures described in Iowa Code section 639.8 apply to those claims which are "not founded on contract" and do not constitute a "tort action." Generally, this would include claims on promissory notes or other debt instruments; or actions where the creditor generally has "a known and undisputed debt," such as an action to enforce a foreign judgment. *See Raver*, 1856 WL 251 at *8; *Johnson*, 1856 WL 129 at *9.

Even *if* there are tort actions "where the amount to be paid could be ascertained with perhaps less difficulty, than other founded on contract," as suggested in *Raver*, 1856

---

[6] Plaintiffs also note that attachment is available as a remedy under the Uniform Fraudulent Transfer Act, Iowa Code chapter 684. Apparently, Plaintiffs argue that since the Iowa Legislature made attachment available as a remedy in chapter 684, it must have intended that attachment be available for a tort action under chapter 639. Since chapter 684 was adopted approximately 150 years after the predecessor of chapter 639, the Court is unable to draw that inference.

[7] At the instant hearing, Plaintiffs' counsel advised the Court that a petition for rehearing in *Heemstra* is now pending before the Iowa Court of Appeals.

WL 251 at *8, this case is not one of them. Even if Plaintiffs' recovery were reasonably certain, determining their likely damages on this record is virtually impossible. This problem was recognized by the Iowa Supreme Court more than 150 years ago:

> To give a party the right to demand payment or security for the claim he may hold against another, presupposes almost necessarily, that his claim or demand is either in fact ascertained and settled, or that it may be approximated at least, by fixing a value on those things, or those services, which in every community, have some estimated or marketable worth. Else, on what basis would he proceed in demanding payment or security? Or if payment or security should be offered, for what amount? By whom or how, is the amount to be ascertained? If the defendant is willing to comply, where is the data from which the computation is to be made? It will be readily seen, that all these, and many other difficulties, would arise on the application of this law to actions for torts.

*Raver*, 1856 WL 251 at *8.

In summary, while I believe that attachment may be appropriate in some cases "not founded on contract," this is not one of them. For the reasons stated by the Court in *Heemstra* and *Raver*, pre-judgment attachment in tort actions is highly problematic. *See also Doehr*, 501 U.S. at 17 (recognizing that tort actions do not "readily lend themselves to accurate *ex parte* assessments of the merits"). This case illustrates that point. Accordingly, I recommend that Plaintiffs' Petition to Attach be denied.

**B. Would Prejudgment Attachment Violate Defendants' Due Process Rights?**

As set forth above, I believe that prejudgment attachment is not appropriate in this case. In the event the district court may disagree, however, I will also address Defendants' second principal argument: that prejudgment attachment violates their due process rights.

As indicated above, attachment pursuant to Iowa Code chapter 639 is intended to be a summary proceeding. *See Farmers Nat. Bank v. Manke*, 500 N.W.2d 19 (Iowa 1993). Prior to the instant hearing, Plaintiffs filed a "Motion for Confirmation of Non-

11

Evidentiary Nature of February 4, 2010 Hearing," asking that the Court "confirm" that attachment is a summary proceeding and that no evidence is required by Plaintiffs or permitted by Defendants. *See* docket number 23. The Court granted Plaintiffs' motion, stating that "Plaintiffs' Petition to Attach will be determined based on the sworn petition and supporting affidavits. The Court will not test the truth of Plaintiffs' allegations in support of the requested attachment." *See* Order Regarding Hearing at 4 (docket number 26 at 4).

Plaintiffs argue that for a writ of attachment to issue, nothing more is required than the filing of a sworn petition asserting one of the grounds enumerated in Iowa Code section 639.3. For example, all they are required to demonstrate to attach Seibert's assets is the fact that he is not a resident of Iowa. *See* Iowa Code § 639.3(2) (authorizing attachment if "the defendant is a nonresident of the state."). Similarly, Plaintiffs assert that upon their sworn petition "[t]hat the debt is due for property obtained under false pretenses," they are entitled to attach Vosburg's and Gabrielson's property.[8] *See* § 639.3(12).

Defendants argue that attachment under these circumstances violates their right to due process, citing *Connecticut v. Doehr*, 501 U.S. 1 (1991). There, the plaintiff instituted a civil action for assault and battery. Consistent with Connecticut law, the plaintiff submitted an application for attachment, asserting that there was "probable cause to sustain the validity of the plaintiff's claims and (1) that the prejudgment remedy requested is for an attachment of real property." *Id.* at 5. A superior court judge found the requisite probable cause and ordered an attachment on the defendant's home. The

---

[8] In their petition to attach, Plaintiffs also allege that Defendants "are about to convert the Defendants' property or part thereof into money for the purpose of placing it beyond the reach of the Defendants' creditors" (§ 639.3(10)), "the Defendant is about to dispose of property belonging to the Plaintiffs" (§ 639.3(13)), and "the Defendant is about to convert the Plaintiffs' property or part thereof into money for the purpose of placing it beyond the reach of the Plaintiffs" (§ 639.3(14)). Plaintiffs have not asserted any facts to support those summary allegations, however, and did not argue those theories in their brief or at the instant hearing.

defendant then filed an action in federal district court, claiming the Connecticut statute was unconstitutional under the due process clause of the Fourteenth Amendment. In concluding that the defendant's due process rights were violated, the court considered three factors: First, the defendant's interest that would be affected by a prejudgment attachment; second, the "risk of erroneous deprivation" under the state court procedures and the "probable value of additional or alternative safeguards"; and third, the interest of the party seeking the prejudgment remedy. *Id.* at 11.

Regarding the first factor, the court noted that "the property interests that attachment affects are significant." *Id.* It is not necessary that the attachment amount to a complete, physical, or permanent deprivation of real property in order to trigger a due process concern. "To the contrary, our cases show that even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection." *Id.* at 12.

In the instant action, Defendants' interests will be significantly impacted by a prejudgment attachment. Plaintiffs seek to attach Defendants' interests in eight states and two foreign countries.[9] Those property interests include 17 hotels, 6 restaurants, a bowling alley, at least 2 other businesses, 19 other parcels of real estate, vehicles, and 11 bank accounts. Defendants argue that liens placed on these assets through prejudgment attachment will have far-reaching effects on the operation of the businesses and the interests of other investors.[10] The Court concludes that the "private interest" that will be

---

[9] *See* Expedited Petition to Attach with Notice at 2-4 (docket number 13 at 2-4).

[10] In his Affidavit, Defendant John F. Seibert asserts:
> (13). The granting of the attachment sought in the Petition would have catastrophic consequences for me, JFS, JFS' 9 employees, dozens of investors in the projects in which I have an interest that Plaintiffs seek to encumber, and the 800 - 900 employees that I manage through the properties for which JFS serves as manager. Granting the attachment would impair or

(continued...)

affected by a prejudgment attachment in the instant action is much greater than that found in *Doehr*.

The second factor considered in *Connecticut v. Doehr* is "the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards." In *Doehr*, a prejudgment attachment would not issue until a judge found "probable cause to sustain the validity of the plaintiff's claim." In finding the statute

---

[10] (...continued)
eliminate my ability to pay bills when due, pay employees, and continue to run my business which not only supports me but each of the persons mentioned above. The Member Control Agreement for the LLC precludes my assignment, including by attachment, of my interest in the LLC. Exhibit U at Article 8. Section 8.3(a)(5) of that document specifies that the institution of an attachment if not dismissed in 60 days shall trigger an option to purchase my interest. I believe all of the 22 other properties in which I have an LLC interest have the same or substantially similar provision. As such, granting the attachment would cause me to lose the right to continue to be involved in the businesses I have spent a lifetime developing, based on nothing more than slanderous, incorrect, and dishonest allegations that have been made against me. Further, each of those 23 properties has a mortgage against it, which I believe contain standard provisions that cause it to be an event of default under the loan if the property or any interest in it is encumbered. That would jeopardize not only my interests but those of all other investors. In the current credit environment, substitute lending could not be obtained, jeopardizing all investors and employees described above. It would be nearly impossible to quantify and prove the extent of damage that such an attachment would cause to me, and a remedy against a bond would be of little to no benefit I would likely face bankruptcy before I ever had a chance to fund any such litigation. In addition, the bond would be of no remedy for the massive harm caused by persons not a party to this litigation as described above. *See* Seibert Affidavit at 12-13 (docket number 29-1 at 12-13).

unconstitutional, however, the Court found that even with a probable cause requirement, "the risk of error was substantial." *Id.* at 14.

> Permitting a court to authorize attachment merely because the plaintiff believes the defendant is liable, or because the plaintiff can make out a facially valid complaint, would permit the deprivation of the defendant's property when the claim would fail to convince a jury, when it rested on factual allegations that were sufficient to state a cause of action but which the defendant would dispute, or in the case of a mere good-faith standard, even when the complaint failed to state a claim upon which relief could be granted. The potential for unwarranted attachment in these situations is self-evident and too great to satisfy the requirements of due process absent any countervailing consideration.

*Id.* at 13-14. The Court then considered whether any "safeguards" may adequately reduce this risk. In *Doehr*, for example, the statute provided for an expeditious postattachment adversary hearing and "a double damages action if the original suit is commenced without probable cause." *Id.* at 15. The Court found these postattachment remedies to be constitutionally inadequate. *Id.*

In Iowa, no finding of probable cause by the court is required. Rather, Plaintiffs note that prejudgment attachment may issue based on the mere sworn allegation of Plaintiffs. Because the Court plays no role in testing the truth of the allegations, the "risk of erroneous deprivation" is substantial. Plaintiffs would argue that Defendants have a remedy for wrongful attachment – an action on the bond. I believe, however, that if an attachment was wrongfully issued here, judgment on a bond many months – or years – later would provide little relief. *See Fuentes v. Shevin*, 407 U.S. 67, 82 (1972) ("no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right to procedural due process has already occurred.").

Third, the Court in *Doehr* concluded that the plaintiff's interests in *Doehr* were "too minimal" to support an *ex parte* attachment. *Id.* at 16.

> The plaintiff had no existing interest in Doehr's real estate when he sought the attachment. His only interest in attaching the property was to ensure the availability of assets to satisfy his judgment if he prevailed on the merits of his action. Yet there was no allegation that Doehr was about to transfer or encumber his real estate or take any other action during the pendency of the action that would render his real estate unavailable to satisfy a judgment. Our cases have recognized such a properly supported claim would be an exigent circumstance permitting postponing any notice or hearing until after the attachment is effected. (citations omitted) Absent such allegations, however, the plaintiff's interest in attaching the property does not justify the burdening of Doehr's ownership rights without a hearing to determine the likelihood of recovery.

*Id.* Similarly, the assets which Plaintiffs seek to attach in the instant action are unrelated to the transaction giving rise to Plaintiffs' complaint. Other than the bare summary allegation found in the petition to attach, Plaintiffs do not assert any facts to "properly support" a finding that Defendants are about to convert or dispose of their property in an effort to put it out of Plaintiffs' reach.

Plaintiffs argue that the constitutionality of Iowa Code chapter 639 was established in *Stoller Fisheries, Inc. v. American Title Ins. Co.*, 258 N.W.2d 336 (Iowa 1977). There, a foreign corporation argued that prejudgment attachment violated its due process rights. The trial court found chapter 639 was unconstitutional because it provided for neither notice nor hearing prior to or immediately after attachment. *Id.* at 342. After noting that "the constitutional status of attachment statutes is in limbo at the federal level," the Iowa Supreme Court reversed. *Id.* at 345. The Court noted that a bond must be posted prior to the issuance of a writ of attachment. *Id.* This "saving characteristic," together with the "strong presumption of constitutionality which attends statutes regularly enacted by our

General Assembly," persuaded the Court that the attachment statute passed constitutional scrutiny. *Id.* at 346.

> This statute is rationally related to a vital state interest. A state must protect the rights of creditors from debtors who, without the statute, could easily thwart the lawful attempts of their creditors to enforce the obligations of their debtors. A state must, at the same time, protect the rights of debtors from unjustified seizure of their property.
>
> While we admit our statute does not perfectly protect the rights of both creditors and debtors, we find it does effect "a constitutional accommodation of the conflicting interests of the parties." (citing *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 607 (1974)).
>
> In light of all that has been set out above and after careful consideration of the arguments of the parties we conclude American has not sustained its burden to prove the statute unconstitutional.

*Id.*

As Defendants note, however, *Stoller* was decided 14 years prior to the United States Supreme Court's decision in *Doehr*. In part IV of the *Doehr* decision, the Court considered whether requiring the plaintiff to post a bond would meet due process requirements.[11] The *Doehr* Court found the argument that a bond renders sufficient safeguards "unconvincing." *Id.* at 22. "[A] wrongful attachment can inflict injury that will not fully be redressed by recovery on the bond after a prompt postattachment hearing determines that the attachment was invalid." *Id.* at 23. In Iowa, a defendant is not entitled to "a prompt postattachment hearing." Rather, he must bring an action on the attachment bond, which affords only monetary relief long after the wrongful attachment has done its

---

[11] Four justices concurred in part IV of the *Doehr* opinion. Since *Connecticut* did not require a bond, the majority of the Court did not reach the issue. *See Doehr*, 501 U.S. at 18.

damage. I don't believe this process meets the constitutional requirements set forth in *Doehr*.

After applying the considerations set forth in *Doehr*, the Court believes that prejudgment attachment under these circumstances violates Defendants' right to due process. Clearly, Defendants have a substantial interest in not having liens placed on their real property, businesses, bank accounts, and vehicles. Because there is no judicial review of the facts underlying Plaintiffs' allegations, there is substantial "risk of erroneous deprivation." The "safeguard" of requiring bond and permitting postattachment action on the bond is a hollow remedy in circumstances such as this. Finally, Plaintiffs do not claim any direct interest in Defendants' other property. That is, the property which is the target of the attachment is unrelated to the transaction which gives rise to the underlying dispute. After considering all of these facts and circumstances, I believe prejudgment attachment would violate Defendants' right to due process.

### C. Defendants' Other Arguments

In resisting Plaintiffs' petition to attach, Defendants also assert additional arguments, including: (1) the petition is not properly sworn as required by Iowa Code section 639.3; (2) the petition is plead in the alternative, in violation of section 639.4; (3) the petition fails to provide an adequate basis for the court to make an "allowance of value," as required by section 639.8; (4) the petition seeks to attach property outside of the state of Iowa, which chapter 639 does not allow; and (5) Plaintiffs' have not agreed to post a bond, as required by section 639.11. For the reasons set forth above, the Court believes that it is unnecessary to address these additional arguments. Even if the petition is properly sworn, limits itself to property found in Iowa, and bond was posted, the Court nonetheless concludes Plaintiffs are not entitled to attachment under these circumstances.

### VI. SUMMARY

In summary, I believe that Plaintiffs are not entitled to prejudgment attachment, and their petition to attach should be denied. Plaintiffs' claims sound in tort. The Iowa Court

of Appeals recently stated that "in Iowa, pre-judgment attachment has not been recognized in a tort action." *Heemstra*, 2010 WL 200454 at *2. While prejudgment attachment may be appropriate in some cases "not founded on contract," this is not one of them. Plaintiffs' entitlement to recovery is hotly contested and their damages, if any, are not "ascertained and settled." *See Raver*, 1856 WL 251 at *8. Furthermore, prejudgment attachment under these circumstances would violate Defendants' right to due process. Iowa Code chapter 639 is a summary process, which does not permit the Court to test the truth of the allegations contained in the petition, nor does it allow Defendants to have a prompt postattachment hearing to test the merits. Rather, Defendants' sole remedy is an action on the attachment bond. *See Manke*, 500 N.W.2d at 20; *Rockport Co.*, 447 N.W.2d at 128. Under these circumstances, a judgment for wrongful attachment – coming months or years later – would not provide Defendants with adequate relief. Accordingly, I believe Plaintiffs' request for prejudgment attachment should be denied.

## VII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the Petition to Attach (docket number 13) filed by the Plaintiffs on January 20, 2010 be **DENIED**. For the same reasons, I respectfully recommend that the Motion to Dismiss Petition to Attach (docket number 29) filed by Defendants John F. Seibert and JFS Development, Inc. on February 3, 2010 be **GRANTED**. and the Motion to Quash and Dismiss Petition for Attachment (docket number 32) filed by Defendants Ted Vosburg and Marc Gabrielson on the same date be **GRANTED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the District Court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if either party is going to object to this Report*

*and Recommendation, a transcript of the hearing held on February 4, 2010 must be ordered promptly.*

DATED this __8th__ day of March, 2010.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA