**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

CEDAR RAPIDS LODGE & SUITES,
LLC and JAMES T. RYMES, RHONDA
COBORN, MICHAEL COBORN,
SCOTT SHISLER, JULIE SHISLER,
PAMELA J. COBB REVOCABLE
TRUST, RAYMOND MULFORD,
THERESA A. MULFORD, JACOB
SAILER and JERRED RUBLE By direct
action in their individual capacities,

        Plaintiffs,

vs.

JFS DEVELOPMENT, INC., JOHN F.
SEIBERT, TED VOSBURG, MARC
GABRIELSON and LIGHTOWLER
JOHNSON ASSOCIATES, INC.,

        Defendants.

No. 09-CV-175-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.   **STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

IV.   **OBJECTIONS TO THE REPORT AND RECOMMENDATION** . . . . . . . . **4**
    A.    *Prejudgment Attachment in Tort Actions* . . . . . . . . . . . . . . . . . . . . **4**
        1.    *Unpublished nature of* **Heemstra** . . . . . . . . . . . . . . . . . . . **5**
        2.    *Binding effect of* **Heemstra** . . . . . . . . . . . . . . . . . . . . . . **6**
        3.    *Nature of Plaintiffs' claims* . . . . . . . . . . . . . . . . . . . . . . **10**
    B.    *Due Process* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

V.    *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

# I. INTRODUCTION

The matter before the court is Plaintiffs' Objections (docket no. 50) to United States Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 46). Judge Scoles recommends that the undersigned deny Plaintiffs' "Expedited Petition to Attach with Notice" ("Petition to Attach") (docket no. 13). Judge Scoles also recommends that the undersigned grant the "Motion to Dismiss Petition to Attach" ("Motion to Dismiss") (docket no. 29), filed by Defendants JFS Development, Inc. ("JFS") and John F. Seibert, and the "Motion to Quash and Dismiss Petition for Attachment" ("Motion to Quash") (docket no. 32), filed by Defendants Ted Vosburg and Marc Gabrielson.

# II. PROCEDURAL BACKGROUND

On December 3, 2009, Plaintiffs filed an 18-count Complaint (docket no. 1). The Complaint arises from the development of an AmericInn hotel ("Hotel") in Cedar Rapids, Iowa. Plaintiffs allege that Defendants fraudulently induced them to invest in the Hotel and proceeded to mishandle the financing, construction and/or management of the Hotel. Plaintiffs seek monetary damages and declaratory relief.

On January 20, 2010, Plaintiffs filed the Petition to Attach. Plaintiffs ask the court to order that a writ of attachment issue against Defendants' property, including various hotels, real property, vehicles, bank accounts and other personal property. On February 3, 2010, JFS and Seibert filed the Motion to Dismiss. That same date, Vosburg and Gabrielson filed the Motion to Quash.

On February 4, 2010, Judge Scoles held a hearing ("Hearing") on the Petition to Attach, Motion to Dismiss and Motion to Quash. Plaintiffs James T. Rymes, Rhonda L. Coborn, Michael Coborn and Scott Shisler were present at the Hearing. Attorneys Robert H. Miller, Kevin J. Visser and Eric W. Lam represented Plaintiffs. Defendant Seibert was present at the Hearing. Attorneys Brad J. Brady and Matthew L. Preston represented JFS and Seibert. Attorneys Kevin H. Collins and Sarah J. Gayer represented Vosburg and

Gabrielson.

On February 9, 2010, Gabrielson and Vosburg filed an Answer (docket no. 40). That same date, JFS and Seibert filed an Answer (docket no. 41) and asserted counterclaims against Plaintiffs Cedar Rapids Lodge & Suites, LLC ("CRLS") and James T. Rymes. On February 12, 2010, Defendant Lightowler Johnson Associates, Inc. ("Lightowler") filed an Answer (docket no. 42). On February 16, 2010, Vosburg and Gabrielson filed an Amended Answer (docket no. 43) and asserted a counterclaim against CRLS.

On March 8, 2010, Judge Scoles filed the Report and Recommendation. On March 22, 2010, Plaintiffs filed the Objections. On March 29, 2010, Vosburg and Gabrielson filed a Response ("V&G Response") (docket no. 51). That same date, JFS and Seibert filed a Response ("Seibert Response") (docket no. 52).

Neither side requests oral argument on the Objections and the court finds that oral argument is unnecessary. The matter is fully submitted and ready for decision.

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (2005); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *see also* Fed. R. Civ. P. 72(b)(3) (stating "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(c)(3) (stating a judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions"). The Eighth Circuit Court of Appeals held it is

reversible error for the district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600; *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996).

## IV. OBJECTIONS TO THE REPORT AND RECOMMENDATION

Plaintiffs raise two objections to the Report and Recommendation. First, Plaintiffs argue that Judge Scoles erred in finding that prejudgment attachment in the instant action would violate Defendants' right to due process. Second, Plaintiffs argue that Judge Scoles "erroneously followed the unpublished opinion of the Iowa Court of Appeals in *Estate of Lyon v. Heemstra*" to conclude that prejudgment attachment is not available in the instant action. Objections at 1. Because the court agrees that prejudgment attachment is not available in tort cases such as the instant action, it need not address the due process issue.

### A. Prejudgment Attachment in Tort Actions

Judge Scoles concluded that "the prejudgment attachment procedure set forth in Iowa Code chapter 639 is not available in actions sounding in tort." Report and Recommendation at 10. In reaching this conclusion, Judge Scoles relied upon the Iowa Court of Appeals' recent decision in *Estate of Lyon v. Heemstra*. No. 09-0164, 2010 WL 200454 (Iowa Ct. App. Jan. 22, 2010) (Table). In *Heemstra*, the plaintiff brought a wrongful death action against the defendant for the shooting death of her husband. Upon filing the wrongful death action, writs of attachment issued on the defendant's real property. Wells Fargo Bank intervened and argued that its judgment liens had priority over the liens imposed by the plaintiff's writs of attachment. The Iowa Court of Appeals noted that, "in Iowa, pre-judgment attachment has not be recognized in a tort action." *Heemstra*, 2010 WL 200454, at *2. Accordingly, the Iowa Court of Appeals held that "the writs of attachment were improperly granted in the first instance." *Id.*

Although Judge Scoles concluded that prejudgment attachment is unavailable in tort

actions, he also recognized that some Iowa case law prior to *Heemstra* suggested that prejudgment attachment may be available in certain tort actions where the plaintiff's damages are fairly ascertainable. However, Judge Scoles ultimately concluded that prejudgment attachment was inappropriate in the instant action because "determining [Plaintiffs'] likely damages on this record is virtually impossible." Report and Recommendation at 11.

Plaintiffs argue that Judge Scoles's reliance on *Heemstra* is erroneous for three reasons. First, Plaintiffs argue that *Heemstra* is an unpublished opinion and therefore is not binding precedent. Second, Plaintiffs argue that this court is not bound by *Heemstra* and that prejudgment attachment is appropriate in the instant action. Third, Plaintiffs contend that, "[e]ven if *Heemstra* is read to stand for the blanket proposition that the Iowa attachment statute is never available in a 'tort action,' the Plaintiffs seek recovery based on both tort and non-tort based theories." Objections at 12 (emphasis in original). The court addresses these arguments, in turn.

### 1. Unpublished nature of Heemstra

On January 27, 2010, the plaintiff in *Heemstra* filed a petition for rehearing to the Iowa Court of Appeals.[1] On February 2, 2010, the petition for rehearing was denied. On February 16, 2010, the plaintiff filed an application for further review. On March 16, 2010, the Iowa Supreme Court denied the application for further review. On March 25, 2010, procedendo issued.[2]

---

[1] Iowa state court criminal and civil records may be accessed at the following address: http://www.iowacourts.gov/Online_Court_Services/. The court takes judicial notice of the state proceedings. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (recognizing that court "may take judicial notice of judicial opinions and public records").

[2] A procedendo is "an order by the appellate court requiring a lower court to proceed to judgment." *State v. Hawkeye Bail Bonds, Surety*, 565 N.W.2d 615, 617 (Iowa

(continued…)

Plaintiffs correctly note that the Iowa Supreme Court's denial of further review does "not constitute approval by the [Iowa] [S]upreme [C]ourt of the opinion sought to be reviewed." Iowa Ct. R. 21.30(3). Plaintiffs also point out that *Heemstra* is not controlling authority because it is currently an unpublished opinion. The Iowa Rules of Appellate Procedure provide that "[a]n unpublished opinion or decision of a court . . . may be cited in a brief[.]" Iowa R. App. P. 6.904(2)(c). However, "[u]npublished opinions or decisions shall not constitute controlling legal authority." *Id.*

The court agrees that, as a currently unpublished opinion, the Iowa Court of Appeals decision in *Heemstra* is not controlling legal authority. However, Plaintiffs do not suggest that the court should completely disregard *Heemstra*, and the court declines to ignore the most recent decision from an Iowa court on the availability of prejudgment attachment in tort actions.

### 2. *Binding effect of* **Heemstra**

In diversity actions, the "[d]ecisions from the state supreme court as to state law are binding" on a federal court.[3] *Baptist Health v. Smith*, 477 F.3d 540, 542 (8th Cir. 2007). "When a state's highest court has not decided an issue, it is the task of [the federal court] to predict how the state supreme court would resolve the issue." *United Fire & Cas. Ins. Co. v. Garvey*, 328 F.3d 411, 413 (8th Cir. 2003). Decisions of a state intermediate appellate court are not binding on a federal court. *Id.* However, "'they are

---

[2](...continued)
1997).

[3] Plaintiffs note that "[t]his [c]ourt's jurisdiction is <u>not</u> based on diversity, but based on the fact that the Plaintiffs' claim arises under federal law, pursuant to 28 U.S.C. § 1331." Objections at 9 n.3 (emphasis in original). "Nonetheless, Plaintiffs concede that other than the counts sounding in R.I.C.O., and other than the claims based on the organizational documents that established [CRLS], the bulk of the Plaintiffs' non-R.I.C.O. common-law claims sound in fraud and misrepresentation, and as such are governed by state law, much like a diversity-based proceeding." *Id.*

persuasive authority and [a federal court] must follow them when they are the best evidence of what state law is.'" *Id.* (quoting *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 883 (8th Cir. 2000)). "Intermediate state court decisions should not be disregarded 'unless [the federal court is] convinced by other persuasive data that the highest state court would decide the issue otherwise.'" *Id.* (quoting *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967)).

Plaintiffs ask that the court "not follow *Heemstra*." Objections at 10. Plaintiffs assert that "*Heemstra* does not stand for the proposition that the Iowa attachment statute [is] categorically unavailable in a tort action." *Id.* (emphasis in original). Rather, Plaintiffs contend that, "even if *Heemstra* is controlling, it merely stands for the proposition that the Iowa attachment statute is not available when the claim asserted by a plaintiff is not readily ascertainable[.]" *Id.* at 11.

Judge Scoles acknowledged that, in *Raver v. Webster*, 1856 WL 251 (Iowa 1856), the Iowa Supreme Court "seemed to suggest that under certain circumstances an attachment may be appropriate in a tort action[.]" Report and Recommendation at 7. Specifically, *Raver* suggested that "there may be cases in tort, where the amount to be paid could be ascertained with perhaps less difficulty, than others founded on contract." 1856 WL 251, at *8. However, the Iowa Supreme Court opined that, "as a *rule*," prejudgment attachment "was intended to apply" to contract actions, and not tort actions. *Id.* (emphasis in original).

Judge Scoles concluded that, "[e]ven *if* there are tort actions 'where the amount to be paid could be ascertained with perhaps less difficulty, than other[s] founded on contract,' as suggested in *Raver*, . . . this case is not one of them." Report and Recommendation at 10-11 (emphasis in original). Judge Scoles found that, "[e]ven if Plaintiffs' recovery were reasonably certain, determining their likely damages on this record is virtually impossible." *Id.* at 11.

The court finds that *Heemstra* is "the best evidence of what [Iowa] state law is." *United Fire & Cas. Ins. Co.*, 328 F.3d at 413. In *Raver*, the Iowa Supreme Court expressed serious doubts as to whether prejudgment attachment was available in tort actions. At the very least, *Raver* indicates that prejudgment attachment is unavailable in tort actions where the amount of the plaintiff's damages is speculative and uncertain. In *Heemstra*, the Iowa Court of Appeals unequivocally stated that, "in Iowa, pre-judgment attachment has not been recognized in a tort action."[4] 2010 WL 200454 at *2. The court concludes that the record does not contain "other persuasive data" that the Iowa Supreme Court "would decide the issue otherwise." *United Fire & Cas. Ins. Co.*, 328 F.3d at 413. Accordingly, for the reasons stated in *Raver* and *Heemstra*, the court finds that prejudgment attachment is inappropriate in the instant action.

Assuming that prejudgment attachment is appropriate in certain tort actions, Plaintiffs contend that Judge Scoles erred in concluding that a determination of their likely damages is "virtually impossible." Report and Recommendation at 11. Specifically, Plaintiffs point to their initial investment of $550,000 and subsequent capital contributions of $66,649 and $96,520. Plaintiffs assert that they "seek to recover, at a minimum, that precisely known amount of these initial investments."[5] Objections at 10 (emphasis in original).

_____

[4] Additional support for the Iowa Court of Appeals' decision in *Heemstra* is found in *Johnson & Stevens v. Butler*, where the Iowa Supreme Court observed that "[a] liability merely in damages, where there is no debt, will not sustain an attachment." 1856 WL 129, at *4 (Iowa 1856). "[T]here must be something more than the inchoate right to claim damages[] to constitute a cause of action upon which an attachment may issue." *Id.*

[5] Plaintiffs also identify additional expenses including construction cost overruns, unpaid royalties and marketing fees, charges, interest and accounts payable. Plaintiffs contend that, "[w]ith these additional categories of damages, [they] can establish nearly $1,500,000.00 of known, concrete, ascertainable damages directly attributable to the Defendants' conduct." Objections at 10-11, n. 4.

Even if prejudgment attachment is available in tort actions, the court finds that prejudgment attachment is nonetheless inappropriate in the instant action because Plaintiffs' damages are not reasonably ascertainable. With respect to Plaintiffs' initial investments and subsequent capital contributions, the court agrees with Defendants Vosburg and Gabrielson that, "[e]ven if Plaintiffs could prove some kind of wrongful conduct, . . . it does not follow that Plaintiffs would be entitled to recover their investments, particularly given that Plaintiffs have ownership interests in the entity in which they invested (an operational hotel)." V&G Response at 12; *see also* Seibert Response at 6 ("Plaintiffs can hardly claim that they have been damaged by paying money to purchase an asset <u>that they continue to own</u>.) (emphasis in original). Judge Scoles also noted this uncertainty at the Hearing:

> THE COURT: Well, we know what the investment is at least arguably. Is that the same thing as the damages?
>
> MR. LAM: That's one component of our damages as our complaint seeks. We want the recovery of those monies that we paid at a minimum times whatever multiplers [sic].
>
> THE COURT: And again, I don't want to get into the facts here, but this isn't money down a rat hole. There's a hotel sitting out there that is occupied.

Hearing Transcript (docket no. 48) at 16:15.

The fact that Plaintiffs maintain ownership interests in the Hotel, which continues to operate, makes any potential estimation of Plaintiffs' damages entirely speculative. Accordingly, the court finds that, even if prejudgment attachment is available in certain tort actions, the uncertainty of Plaintiffs' damages precludes attachment in the instant action.[6]

---

[6] The other expenses identified by Plaintiffs suffer from the same uncertainty, as they are integrally related to the Hotel and Plaintiffs' ownership interests therein.

### 3. Nature of Plaintiffs' claims

Plaintiffs argue that, "[e]ven if *Heemstra* is read to stand for the blanket proposition that the Iowa attachment statute is never available in a 'tort action,' the Plaintiffs seek recovery based on both tort <u>and</u> non-tort based theories." Objections at 12 (emphasis in original). Specifically, Plaintiffs contend that their breach of fiduciary duty claims are based on duties that were "imposed by the initial organizational documents establishing [CRLS] and by state statutes governing the relationships between and among [CRLS's] governors and its members." *Id.* Plaintiffs submit that the duties Defendants allegedly breached "were <u>not</u> tort-based." *Id.* (emphasis in original).

This argument is without merit. Plaintiffs' claims for breach of fiduciary duty are unquestionably tort claims. *See, e.g., Wilson v. IBP, Inc.*, 558 N.W.2d 132, 137 (Iowa 1996) (stating that breach of fiduciary duty is an intentional tort); *Conley v. Public Safety Group, Inc.*, No. 05-1480, 2009 WL 1492269, at *3 (Iowa Ct. App. May 29, 2009) (holding that "breach of fiduciary duty is a tort"); Restatement (Second) of Torts § 874 cmt. b ("A fiduciary who commits a breach of his duty is guilty of tortious conduct to the person for whom he should act."). The fact that Defendants' duties grew out of organizational documents or statutes governing limited liability companies does not transform Plaintiffs' claims into "contract" or "quasi-contract" claims.[7]

### B. Due Process

In light of the court's conclusion that prejudgment attachment is not available in the instant action, it need not address Judge Scoles's conclusion that "prejudgment attachment would violate Defendants' right to due process." Report and Recommendation at 18.

### V. CONCLUSION

In light of the foregoing, it is **HEREBY ORDERED THAT**:

---

[7] At the Hearing, Plaintiffs' counsel also stated that "this is admittedly a tort action . . . ." Hearing Transcript at 15:25

(1)     Plaintiffs' Objections (docket no. 50) are **OVERRULED**;

(2)     The Report and Recommendation (docket no. 46) is **ADOPTED**;

(3)     The Petition to Attach (docket no. 13) is **DENIED**;

(4)     The Motion to Dismiss (docket no. 29) is **GRANTED**;

(5)     The Motion to Quash (docket no. 32) is **GRANTED**.

**DATED** this 29th day of April, 2010.


_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA