IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| CEDAR RAPIDS LODGE & SUITES, LLC, *et al.*,<br><br>    Plaintiffs,<br><br>vs.<br><br>JFS DEVELOPMENT, INC. (f/k/a JCS DEVELOPMENT INC.), JOHN F. SEIBERT, TED VOSBURG, MARC GABRIELSON, and LIGHTOWLER JOHNSON ASSOCIATES, INC.<br><br>    Defendants. | No. C09-0175<br><br>REPORT AND RECOMMENDATION REGARDING MOTION FOR CONTEMPT |

On the 23rd day of August 2011, this matter came on for a hearing on the Motion for Contempt of Court (docket number 135) filed by the Plaintiffs on July 28, 2011. The Plaintiffs were represented by their attorneys, Robert H. Miller, Kevin J. Visser, and Brian Thomas. Defendant John F. Seibert appeared in person and was unrepresented by counsel. Defendant Lightowler Johnson Associates, Inc. was represented by its attorney, Kevin J. Caster. Defendants Ted Vosburg and Marc Gabrielson did not appear, nor anyone for them. Defendant JFS Development, Inc. is in default.

## I. RELEVANT FACTS AND PROCEEDINGS

On December 3, 2009, Plaintiffs filed an 86-page complaint seeking monetary damages and declaratory judgment. The 18-count complaint arises from the development of an AmericInn Motel in Cedar Rapids, Iowa. Plaintiffs claim, among other things, that Defendants fraudulently induced them to invest in the project. Since the filing of the complaint, a default has been entered against JFS Development, Inc. *See* docket number 101. In addition, Defendants Marc Gabrielson and Ted Vosburg have filed for bankruptcy

protection. *See* docket numbers 130 and 132, respectively. A jury trial has been scheduled before Chief Judge Linda R. Reade during the two-week period beginning on January 17, 2012. *See* docket number 114.

On January 13, 2011, Plaintiffs filed a motion to compel production of documents, asking that Defendant John F. Seibert be required to produce his computer systems and hardware for inspection and copying. The motion was set for hearing on January 27, 2011. Plaintiffs were represented at the hearing by their attorneys, Mr. Miller and Mr. Visser. Seibert, who by that time was unrepresented by counsel, did not appear at the hearing. The Court subsequently entered an Order granting Plaintiffs' motion to compel production. *See* docket number 103.

Pursuant to the Court's Order, Seibert and JFS Development, Inc. were required to produce their computer systems and hardware for inspection and copying, at their expense. After certain logistical disputes were resolved, Seibert complied with the Court's Order. At the instant hearing, Rick Stieghorst, of Midwest Legal and eData Services, testified regarding the forensic examination which followed. The bill for those services totaled $43,694.93.[1] Pursuant to the Court's Order, the bill was submitted to Seibert for payment. After Seibert failed to pay the bill, Plaintiffs paid it.

Plaintiffs assert that Seibert is in contempt of Court for failing to pay the forensic computer examination bill, as required by the Court's Order. Plaintiffs also assert that in obtaining the relevant documents, they reasonably incurred attorneys' fees and costs in the amount of $34,233.75. In their brief, Plaintiffs "respectfully request that Defendant Seibert be ordered by the Court to pay over to the Plaintiffs the total of $77,928.68 within 15 days or be subject to a Bench Warrant for his immediate arrest and incarceration until

---

[1] A description of the services performed and copies of the invoices submitted were attached to the instant motion as Exhibit 9. *See* docket number 135-9.

such payment is made."[2] Alternatively, Plaintiffs requested at the time of hearing that judgment enter against Seibert for that amount. Seibert claims that his failure to pay the bill is not willful, and that he simply has no money to pay.

## II. DISCUSSION

It is undisputed that Defendant John F. Seibert was ordered to pay the costs associated with a forensic examination of his computer systems. That examination was conducted at a cost of $43,694.93. Seibert does not contest the reasonableness of the charge for the services rendered. When Seibert failed to pay the expense as required by the Court's Order, the bill was paid in full by the Plaintiffs. The first issue before the Court is whether, on this record, Seibert can be found in contempt of Court and jailed for failing to pay the bill. The second issue is whether Seibert should be ordered to pay Plaintiffs' attorneys' fees.

### A. Contempt of Court

#### 1. Legal Standard

Civil contempt is distinct from criminal contempt. "The purpose of criminal contempt is to 'punish the act of disobedience as a public wrong.'" *United States v. Waggoner*, 103 F.3d 724, 727 (8th Cir. 1997) (quoting *Michaelson v. United States ex rel. Chicago, S.P., Minn. & Omaha Ry.*, 266 U.S. 42, 65 (1924)). Here, Plaintiffs seek a civil contempt judgment. The power of the Court to find a party in civil contempt serves two purposes: (1) to compel compliance with a court's order or process, and (2) to compensate parties for harm incurred by noncompliance. *Hartman v. Lyng*, 884 F.2d 1103, 1106 (8th Cir. 1989). *See also In re Tetracycline Cases*, 927 F.2d 411, 413 (8th Cir. 1991) ("Civil contempt sanctions may be imposed for either or both of two distinct purposes, to coerce compliance with a court order, and to compensate the complainant for

---

[2] *See* Plaintiffs' Brief in Support of Motion for Contempt (docket number 135-22) at 4.

actual losses sustained by him as a result of the defendants' contumacy.") (quoting *In re Chase & Sanborn Corp.*, 872 F.2d 397, 400-01 (11th Cir. 1989)).

"The party seeking a contempt order bears the burden of proving facts warranting such relief by clear and convincing evidence." *Jake's Ltd., Inc. v. City of Coates*, 356 F.3d 896, 899-900 (8th Cir. 2004). Because this is not a criminal contempt proceeding, the "reasonable doubt" standard of proof is not applicable. *National Labor Relations Board v. Blevins Popcorn Co.*, 659 F.2d 1173, 1183 (D.C. Cir. 1981).

As noted by Plaintiffs in their brief, it is not necessary for Plaintiffs to prove that Seibert's failure to comply with the Court's Order was "willful." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1979) ("The absence of willfulness does not relieve from civil contempt. . . . Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act."). *See also National Labor Relations Board*, 659 F.2d at 1183-1184 ("In civil contempt proceedings the clear and convincing evidence standard applies and the failure to comply with the court decree need not be intentional. . . . [T]he intent of the recalcitrant party is irrelevant.").

The Court has discretion in attempting to fashion an appropriate remedy for contempt. "A compensatory sanction is not imposed to vindicate the court's authority or to punish the condemnor, but rather serves to make reparation to the injured party, restoring that party to the position it would have held had the court's order been obeyed." *Hartman*, 884 F.2d at 1106. "Generally, a compensatory sanction 'may not exceed the actual loss to the complainant caused by the actions of respondent, lest the contempt fine become punitive in nature, which is not appropriate in a civil contempt proceeding.'" *In re Tetracycline Cases*, 927 F.2d at 413 (quoting *NLRB v. Laborer's Int'l Union*, 882 F.2d 949, 955 (5th Cir. 1989)).

As previously noted, one of the purposes of a civil contempt proceeding is to compel compliance with a court's order. *United States v. United Mine Workers of America*, 330 U.S. 258, 303 (1947). In some cases, a "conditional jail term" may be

required to coerce compliance. *Hutto v. Finney*, 437 U.S. 678, 690 (1978). For example, a defendant may be committed to jail until he answers a question, because under those circumstances "the defendant himself held the keys to the jail and could release himself upon responding to the order of the court." *United States v. Di Mauro*, 441 F.2d 428, 432 (8th Cir. 1971).

### 2. *Analysis*

Seibert admits receipt of the Court's Order requiring him to pay the cost of the forensic examination of his computer systems. Seibert also admits that he has failed to comply with the Court's Order. Seibert asserts an inability to pay, however, and argues that his noncompliance is not "willful." As set forth above, however, in a civil contempt proceeding the absence of willfulness does not provide a defense. *McComb*, 336 U.S. at 191. Accordingly, I believe that Seibert is in contempt of Court for failing to comply with the Court's Order requiring payment of the cost of the forensic examination.

The fighting issue, however, is what remedy is appropriate. Plaintiffs ask that Seibert be jailed until he pays the bill in full. Essentially, Plaintiffs argue that Seibert "holds the key to the cell door" by simply paying the amount owed. However, Seibert only holds the key to the cell door *if* he has the money to pay. Before an individual may be jailed for failing to pay a financial obligation, there must be clear and convincing evidence of his ability to comply with the Court's Order. *Jake's Ltd., Inc.*, 356 F.3d at 899. That evidence is lacking here. At the time of hearing, Plaintiffs offered no evidence regarding Seibert's current ability to pay the bill. While it is undisputed that Seibert has failed to comply with the Court's Order, I believe the record made at the time of hearing does not justify Seibert's incarceration pending payment of the financial obligation. *Hartman*, 884 F.2d at 1106 ("Because the contempt power is a substantial one, it should be used sparingly and not be lightly invoked.").

The purpose of civil contempt is to compel compliance with the Court's Order and to compensate Plaintiffs for the harm done by Seibert's noncompliance. *Hartman*,

5

884 F.2d at 1106. The record established that after Seibert failed to pay the bill, it was paid in full by the Plaintiffs. The purposes of civil contempt are met by the entry of judgment in favor of Plaintiffs and against Seibert for the cost of the forensic examination. By reducing the obligation to a judgment, Plaintiffs may then take appropriate action to collect on that judgment.

### B. Attorneys' Fees

#### 1. Legal Standard

In their instant motion, Plaintiffs also ask that Seibert be required to pay their attorney fees associated with the motion to compel production of Seibert's computer systems and hardware for inspection and copying. FEDERAL RULE OF CIVIL PROCEDURE 37(a)(3) provides that if a party fails to make a disclosure required by Rule 26(a) or fails to permit inspection of documents requested under Rule 34, then the other party "may move to compel disclosure and for appropriate sanctions." If the motion to compel discovery is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5)(A). Payment will not be ordered, however, if the movant filed the motion before attempting in good faith to obtain the discovery without court action, the opposing party's nondisclosure was substantially justified, or "other circumstances make an award of expenses unjust." *Id.* *See also Collins v. Burg*, 169 F.3d 563, 565 (8th Cir. 1999) ("FED. R. CIV. P. 37 gives a district court broad authority to impose sanctions for failure to respond to discovery requests or to disclose information required by FED. R. CIV. P. 26(a)).").

#### 2. Analysis

For the following reasons, I believe that judgment should enter for the costs incurred by Plaintiffs in obtaining the information, including reasonable attorneys' fees. Plaintiffs' motion outlines Seibert's repeated failure to comply with the rules governing

discovery, and the extraordinary efforts required by Plaintiffs to obtain the requested information. Seibert's initial disclosures pursuant to Rule 26(a) were incomplete. After Seibert failed to timely respond to Plaintiffs' requests for production of documents, and after a "meet and confer" was unproductive, Plaintiffs filed a motion to compel production of documents. Seibert responded to the document requests shortly before the motion to compel was to be argued.[3] Seibert's counsel at that time asserted in a letter that "[w]e have no other discoverable documents responsive to your discovery requests."[4]

Plaintiffs knew that the production was incomplete, however, because they had "identified at least 50 relevant emails sent or received by Seibert or his employees that the Plaintiffs had obtained through third-party production but that had not been produced to the Plaintiffs by Seibert or JFS Development."[5] Plaintiffs then filed the motion to compel Seibert to produce his computer systems and hardware for inspection and copying, attaching the 50 exemplar emails. According to Plaintiffs, the forensic examination revealed several significant documents, including those attached to the instant motion as Exhibits 12-15.

Attached to the instant motion is a declaration of Robert H. Miller, stating that he has reviewed his law firm's billings for the time associated with the motion to compel production of Seibert's computer systems for inspection, and that the bill associated with

---

[3] In their motion, Plaintiffs assert that "Seibert and JFS Development finally responded to the Plaintiffs' document requests on November 22, 2010, on the morning that the Motion to Compel was to be argued." See Plaintiffs' Motion for Contempt (docket number 135), ¶ 6 at 2. The docket reflects, however, that the motion was heard on November 29, 2010.

[4] See Letter from Anna Rybicki to Robert H. Miller, dated November 22, 2010. Plaintiffs' Exhibit 5 (docket number 135-5).

[5] See Plaintiffs' Motion for Contempt (docket number 135), ¶ 8 at 2.

7

the work was $29,570.75.[6] According to Miller's declaration, "the Plaintiffs have paid this bill in full." Similarly, a declaration of Jason M. Steffens, local counsel for Plaintiffs, states that his firm has billed $4,663 for work associated with the motion to compel production of Seibert's computers for inspection, and that Plaintiffs have paid that bill in full.[7] Seibert did not contest the reasonableness of the bills submitted by counsel for this work.

The motion to compel production of Seibert's computer systems and hardware for inspection and copying was necessitated by Seibert's repeated failure to comply with the federal rules of discovery. Accordingly, I believe that Seibert should be required to reimburse Plaintiffs for the attorney fees reasonably incurred in that regard. Therefore, judgment should enter in favor of Plaintiffs and against Seibert in the amount of $34,233.75. Including the cost of the forensic computer examination, the total judgment against Seibert would be $77,928.68.

### III. RECOMMENDATION

For the reasons set forth above, I respectfully **RECOMMEND** that the district court find Seibert in contempt of Court for failing to comply with the Court's Order requiring him to pay the cost of a forensic computer examination. I further **RECOMMEND** that the district court enter judgment in favor of Plaintiffs and against John F. Seibert for the cost of the forensic examination ($43,694.93) and for the reasonable attorney fees and costs associated with the motion to compel production of documents ($34,233.75), in the total amount of Seventy-Seven Thousand Nine Hundred Twenty-Eight Dollars sixty-eight cents ($77,928.68).

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party

---

[6] *See* Declaration of Robert H. Miller (docket number 135-10).

[7] *See* Declaration of Jason M. Steffens (docket number 135-11).

may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on August 23, 2011.*

DATED this 1st day of September, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA