IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

CEDAR RAPIDS LODGE & SUITES,
LLC, et al.,

        Plaintiffs,

vs.

JFS DEVELOPMENT, INC. (f/k/a
JCS DEVELOPMENT INC.),
JOHN F. SEIBERT, TED VOSBURG,
MARC GABRIELSON, and
LIGHTOWLER JOHNSON
ASSOCIATES, INC.

        Defendants.

No. C09-0175

REPORT AND RECOMMENDATION
REGARDING MOTION FOR
SANCTIONS

## TABLE OF CONTENTS

I.   INTRODUCTION ................................... 2

II.  PROCEDURAL HISTORY ............................. 2

III. DISCOVERY DISPUTES .............................. 5
    A.   Motion to Compel Production of Documents ................. 5
    B.   Motion to Compel Production of Computer Systems and Hardware
        for Inspection and Copying ............................ 7
    C.   Motion to Compel Access to Documents ..................... 8
    D.   Motion for Sanctions for Failure to Comply with a Court Order
        or to Specifically Cooperate in Discovery and Permit Discovery .... 9
    E.   Motion for Contempt of Court ........................... 9
    F.   Motion for Sanctions for Spoliation of Evidence ............. 10

IV. RELEVANT FACTS ................................. 10
    A.   Missing Hard Drives ................................ 11
    B.   Deleted Files ..................................... 12
        1.   Empty Folders ............................... 12
        2.   Rocketfish Backup Drive ........................ 13

|   |   |   |
|---|---|---|
| 3. | *Simpletech – Silver Hard Drive* | 14 |
| 4. | *Orphan Files* | 14 |
| 5. | *Deleted Emails* | 15 |

V. DISCUSSION ................................. 15

VI. RECOMMENDATION ........................... 20

## I. INTRODUCTION

On the 23rd day of August 2011, this matter came on for a hearing on the Motion for Sanctions Against Defendant John F. Seibert for Spoliation of Evidence (docket number 136) filed by the Plaintiffs on July 28, 2011. The Plaintiffs were represented by their attorneys, Robert H. Miller, Kevin J. Visser, and Brian Thomas. Defendant John F. Seibert appeared in person and was unrepresented by counsel. Defendant Lightowler Johnson Associates, Inc. was represented by its attorney, Kevin J. Caster. Defendants Ted Vosburg and Marc Gabrielson did not appear, nor anyone for them. Defendant JFS Development, Inc. is in default.

## II. PROCEDURAL HISTORY

On December 3, 2009, Plaintiffs filed an 89-page 18-count complaint, seeking damages arising from the development of an AmericInn Motel in Cedar Rapids, Iowa. Plaintiff Cedar Rapids Lodge & Suites, LLC is a Minnesota limited liability corporation formed for the purpose of developing and owning the motel. The 11 individual plaintiffs are investors in the project.

Named as Defendants were JFS Development, Inc., John F. Seibert, Ted Vosburg, Marc Gabrielson, and Lightowler Johnson Associates, Inc. It is alleged that Seibert, Vosburg, and Gabrielson, acting as "founding Governors of the proposed hotel," fraudulently induced Plaintiffs to invest in the project. In the single count (Count VII) directed to Defendant Lightowler Johnson Associates, Inc., it is alleged that Lightowler

negligently performed its duty of care in the provision of architectural and engineering services.

On January 20, 2010, Plaintiffs filed a petition seeking prejudgment attachment on Defendants' various properties and business interests.[1] Following a hearing, the undersigned magistrate judge recommended that the district court deny Plaintiffs' petition to attach.[2] After considering objections filed by Plaintiffs, Chief Judge Linda R. Reade adopted the recommendation and denied the petition to attach.[3]

Meanwhile, Defendants Ted Vosburg and Marc Gabrielson jointly filed an answer,[4] Defendants JFS Development, Inc. and John F. Seibert filed a 130-page answer and counterclaim,[5] and Lightowler Johnson Associates, Inc. filed its answer.[6] Vosburg and Gabrielson subsequently amended their answer and added a counterclaim.[7]

On April 13, 2010, the Court filed a Scheduling Order and Discovery Plan.[8] Among other things, the Court established a May 1, 2010 deadline for initial disclosures and a March 1, 2011 deadline for completion of discovery. In reliance on those deadlines, the Court scheduled trial for the two-week period beginning on August 22, 2011.[9]

---

[1] *See* docket number 13.

[2] *See* docket number 46.

[3] *See* docket number 57.

[4] *See* docket number 40.

[5] *See* docket number 41.

[6] *See* docket number 42.

[7] *See* docket number 43.

[8] *See* docket number 55.

[9] *See* docket number 56.

Plaintiffs filed a motion for judgment on the pleadings, asking for dismissal of Count II of the counterclaim filed by JFS Development and Seibert.[10] The district court denied the motion for judgment on the pleadings, and granted JFS's and Seibert's motion to amend their answer and counterclaim.[11] Seibert and JFS Development then filed an amended answer and counterclaim.[12]

Plaintiffs then filed a motion for partial summary judgment, asking that Count II of JFS's and Seibert's counterclaim be dismissed.[13] Shortly after that time, counsel for Seibert and JFS moved to withdraw, stating that their clients were unable to pay them.[14] Citing extensive discovery, the parties jointly asked that the deadlines established in the Scheduling Order be extended.[15] Following a hearing, the Court granted the motion to withdraw filed by JFS's and Seibert's attorneys, extended the pretrial deadlines, and continued the previously-scheduled trial.[16] Trial was subsequently rescheduled for the two-week period beginning on January 17, 2012.[17] Meanwhile, Plaintiffs' motion for partial summary judgment was granted, and Count II of Seibert's counterclaim was dismissed.[18]

---

[10] *See* docket number 58.

[11] *See* docket number 77.

[12] *See* docket number 78.

[13] *See* docket number 84.

[14] *See* docket number 86.

[15] *See* docket number 88.

[16] *See* docket number 95.

[17] *See* docket number 114.

[18] *See* docket number 98.

After JFS's counsel was permitted to withdraw, Plaintiffs asked that JFS be found in default.[19] The Clerk of Court filed a default entry.[20] Counsel for Ted Vosburg and Marc Gabrielson filed a motion asking that they be permitted to withdraw, stating that their clients were unable to pay them.[21] The motion was granted.[22] Both Vosburg and Gabrielson subsequently filed for bankruptcy protection.[23]

On July 15, 2011, Lightowler filed a motion for summary judgment, asking that Plaintiffs' claim against Lightowler be dismissed.[24] Plaintiffs filed their resistance on September 15, 2011.[25] Lightowler filed a reply on September 26, 2011.[26] The motion for summary judgment is currently pending before the district court.

### III. DISCOVERY DISPUTES

Plaintiffs ask that default judgment enter against Seibert for his alleged failure to comply with discovery and for intentional destruction of evidence. Accordingly, the Court will review the discovery in some detail.

#### A. Motion to Compel Production of Documents

As previously noted, the deadline for initial disclosures was May 1, 2010. According to the instant motion, Plaintiffs received Seibert's initial disclosures on May 6, 2010. Seibert apparently produced approximately 875 documents at that time. Believing

---

[19] See docket number 100.

[20] See docket number 101.

[21] See docket number 115.

[22] See docket number 126.

[23] See docket numbers 132 and 130, respectively.

[24] See docket number 133.

[25] See docket number 151.

[26] See docket number 156.

that the documents initially disclosed were "an obviously incomplete set," Plaintiffs served requests for production of documents on JFS and Seibert.[27] JFS and Seibert did not produce responsive documents prior to the deadline of October 24, 2010. Instead, on October 29, 2010, JFS's and Seibert's attorneys filed a motion to withdraw their appearance.

On November 15, 2010, Plaintiffs filed a motion to compel responses to their discovery requests.[28] The motion was set for hearing on November 29, 2010. On the date set for hearing, counsel for JFS and Seibert filed a supplement to their motion to withdraw, stating that on November 22, 2010, they sent Plaintiffs' counsel a CD containing documents numbering approximately 2,600 pages. According to the supplemental motion, "[t]o the knowledge of the undersigned, Defendants have now produced all non-privileged documents that are responsive to Plaintiffs' September 24, 2010 request."[29] Attached to the instant motion as Exhibit 5 is a cover letter from JFS's and Seibert's attorney to Plaintiffs' attorney, dated November 22, 2010, referencing the production of documents.[30] Again, counsel for JFS and Seibert states that "[w]e have no other discoverable documents responsive to your discovery requests."[31]

In their instant motion, Plaintiffs acknowledge receiving additional documents "on the morning that the Motion to Compel was to be argued."[32] Indeed, while the letter from JFS's and Seibert's attorney is dated November 22, 2010, it is stamped "received" on November 29, 2010. Plaintiffs claim, however, that they received "only 370 additional

---

[27] *See* docket numbers 136-3 and 136-4.

[28] *See* docket number 89.

[29] *See* Supplemental Motion of Attorneys (docket number 92), ¶ 3 at 2.

[30] *See* docket number 136-5.

[31] *Id.*

[32] *See* Plaintiffs' Motion for Sanctions (docket number 136), ¶ 6 at 2.

documents, including approximately 145 e-mails, that had not been previously produced."[33] At the time of hearing on November 29, 2010, Plaintiffs' counsel advised the Court "that he had been told by his office 'this morning,' that they had received a CD with 2,700 documents 'which obviously I have not had a chance to review.'"[34] The Court concluded that the motion to compel should be denied without prejudice, finding that

> [i]f, after reviewing the documents recently produced, Plaintiffs believe that JFS and Seibert have not fully responded to Plaintiffs' requests for production of documents, then Plaintiffs may renew their motion, identifying with specificity the areas in which they believe the production is lacking.

See Ruling on Pretrial Motions (docket number 95) at 5.

### B. Motion to Compel Production of Computer Systems and Hardware for Inspection and Copying

On January 13, 2011, Plaintiffs filed a motion to compel Seibert and JFS to produce their computer systems and hardware for inspection and copying.[35] Plaintiffs acknowledged that JFS and Seibert had produced approximately 875 documents with their initial disclosures, and 370 additional documents, including approximately 145 emails, in response to the request for production of documents. Plaintiffs noted that they had produced approximately 5,530 documents and had obtained approximately 3,890 documents and emails from third parties. Moreover, Plaintiffs identified at least 50 emails which were sent or received by Seibert and obtained through third-party document production, but were not produced by Seibert or JFS. Plaintiffs concluded that Seibert and JFS had "failed to conduct a sufficiently thorough investigation of their computers, hard drives, and external storage devices for potentially responsive documents and electronically

---

[33] *Id.*, ¶ 6 at 2.

[34] *See* Ruling on Pretrial Motions (docket number 95) at 4.

[35] *See* docket number 96.

7

stored information."[36] Plaintiffs asked that Seibert and JFS be required to produce their computer systems and hardware for inspection and copying, at their expense.

Plaintiffs' motion was set for hearing on January 27, 2011. It should be recalled that JFS's and Seibert's attorneys were permitted to withdraw on December 6, 2010. On January 26, 2011, Plaintiffs filed a motion for default entry against JFS, and the clerk entered a default entry against JFS on January 27. The hearing minutes reflect that neither JFS nor Seibert appeared at the hearing on January 27, 2011, nor did anyone appear on their behalf. The minutes further reflect, however, that the Court gave Seibert additional time to respond:

> Court to wait until 1/31/2011 for Defendants to file a response
> to Plaintiffs' motion. If Defendant does not file a response,
> then the Court will enter an order granting Plaintiffs' motion.
> If Defendant does file a response, then the Court will enter an
> order setting this matter for hearing.

*See* January 27, 2011 Hearing Minutes (docket number 102) at 2. Seibert did not file any response to the motion to compel production of the computer systems, and the Court entered an Order granting the motion on February 1, 2011.[37] The Order established a protocol for Seibert and JFS to produce their computer systems and hardware for inspection and copying, at their expense.

### C. Motion to Compel Access to Documents

On February 15, 2011, Plaintiffs filed a Motion to Compel Access to Documents in the Possession of Seibert and JFS.[38] While discussing arrangements for the examination of the computer systems, Seibert disclosed to Plaintiffs' counsel that since the offices of JFS had been closed, boxes of documents had been moved to the homes of several JFS

---

[36] *See* Plaintiffs' Motion to Compel Production of Computer Systems (docket number 96), ¶ 5 at 2-3.

[37] *See* docket number 103.

[38] *See* docket number 104.

8

employees. He also indicated that documents were stored in boxes in the garage at JFS's former offices, and at another facility in Roseville, Minnesota. Plaintiffs asked that the Court order Seibert to produce the documents stored in private homes, and that Plaintiffs' counsel be given access to JFS's storage facilities. Seibert responded *pro se*, repeatedly denying that the files contained relevant documents not already produced.[39] After reviewing the motion and the resistance, the Court concluded that the motion to compel access to the documents should be denied.[40]

### D. Motion for Sanctions for Failure to Comply with a Court Order or to Specifically Cooperate in Discovery and Permit Discovery

On February 16, 2011, Plaintiffs filed a motion claiming that Seibert had failed to comply with the Court's Order to compel production of his computer systems for copying and inspection.[41] Specifically, Plaintiffs claimed that Seibert had reneged on an agreement regarding the logistical details of the inspection. The Court resolved the dispute at an expedited telephonic hearing and denied the motion for sanctions.[42]

### E. Motion for Contempt of Court

On July 28, 2011, Plaintiffs filed a motion asking that Seibert be found in contempt of Court for failing to pay the bill associated with the copying and inspection of the computer systems, and that he be required to pay attorney fees associated with his failure to produce documents.[43] Following a hearing, the undersigned magistrate judge issued a Report and Recommendation to the district court, recommending that judgment enter

---

[39] *See* docket number 109.

[40] *See* docket number 113.

[41] *See* docket number 105.

[42] *See* docket number 108.

[43] *See* docket number 135.

against Seibert for the cost of the forensic computer examination and for attorney fees.[44] Seibert filed objections to the Report and Recommendation on September 14, 2011.[45] The matter is now pending before the district court.

### F. Motion for Sanctions for Spoliation of Evidence

On July 28, 2011, the same date that they filed their motion for contempt, Plaintiffs filed the instant motion seeking sanctions against Seibert for alleged spoliation of evidence.[46] Plaintiffs assert that Seibert "has shown a repeated and nearly total disregard for the Court's discovery rules in this case," and that he willfully destroyed documents.[47] Plaintiffs ask that a default judgment enter against Seibert, with a hearing to determine the amount of damages. This motion will be discussed in greater detail below.

## IV. RELEVANT FACTS

On February 16, 2011, Seibert produced seven computers/laptops, ten internal/external hard drives, and twenty-three compact discs for inspection and copying.[48] Richard Stieghorst, an expert retained by Plaintiffs, took possession of the items.[49] Over the next three days, Stieghorst created exact duplicate images of the stored information, using "forensic duplicators." The original computers, hard drives, and compact discs were then returned to Seibert.

---

[44] See docket number 146.

[45] See docket number 148.

[46] See docket number 136.

[47] See Plaintiffs' Motion for Sanctions (docket number 136), ¶ 26 at 8.

[48] A list of the items produced was attached to Plaintiffs' instant motion as Exhibit 7-A. See docket number 136-7 at 10.

[49] At the time of hearing, Stieghorst testified that he holds a bachelors and masters degree, although the record is silent regarding the discipline in which those degrees were obtained. Stieghorst also testified that he has been extensively trained in forensic computer analysis. Seibert did not challenge Stieghorst's expertise.

After copying the items, Stieghorst took the duplicate images to the "forensic labs" at the offices of Midwest Legal and eData Services in Milwaukee, Wisconsin, for analysis. First, Stieghorst "de-duplicated" the files, to eliminate duplicate files. Stieghorst then employed "optical character recognition" to convert the files to a format which would allow word searches. Stieghorst then searched the data using search terms which were agreed upon between the parties, pursuant to the protocol established in the Court's Order allowing Plaintiffs access to the computers.

The "first pass" with the search terms produced more than 41,300 documents. At the suggestion of Stieghorst's search team, the search was modified to eliminate "any document that hit on a search term that was related to one of Mr. Seibert's other properties, but did not contain any reference to Cedar Rapids in particular."[50] Even with that modification, the production set was over 34,000 documents. The resulting documents were posted for review by the parties, pursuant to the protocol.

### A. Missing Hard Drives

In analyzing the data found on a black HP laptop formerly used by Seibert, which was no longer operational, Stieghorst identified four "external media devices" that had been connected to the laptop, but had not been produced for forensic imaging. Similarly, in analyzing a bronze HP laptop used by Seibert, Stieghorst identified three additional "drives" that had been connected to the laptop, but were not provided for forensic imaging. On cross-examination by Seibert, however, Stieghorst conceded that there are innocent explanations for the failure to provide the identified external hard drives. For example, if a laptop is taken in for repair work, the repairman would likely use a plug-in drive to save the information on the computer prior to working on it. Similarly, information could be downloaded on a thumb drive to provide to a customer or some other

---

[50] A list of the final search terms was attached to the instant motion as Exhibit 7-B. *See* docket number 136-7 at 12.

11

third party. An employee using a computer could also download information on a thumb drive for personal use.

Seibert testified at the instant hearing that JFS did not have a central server, and the corporate information was therefore saved on the hard drives contained in the individual computers. According to Seibert, he produced all of the computers, including the black laptop which no longer worked. In addition, Seibert testified that he produced all of the external hard drives which he could locate, including some which were unexpectedly found when JFS closed its offices. According to Seibert, there was "no point in time that we were trying to not provide the court or the forensic analysis with all the information that we had."

### B. Deleted Files

Of particular significance to Plaintiffs' instant motion for sanctions is their allegation that Seibert deliberately deleted relevant documents. Seibert admits that he and JFS received a "litigation hold/spoliation letter" from Plaintiffs' attorney, dated December 3, 2009.[51] Seibert testified that when the litigation hold letter was received, his employees were told to back up their computers and hold the information "for potential examination or whatever into the future." According to Seibert, "each employee backed their own individual computer up." Plaintiffs allege, however, that a large number of relevant documents were deleted after December 3, 2009. According to Stieghorst, he found five separate categories of deleted documents.

#### 1. Empty Folders

In May 2010, a system upgrade was done to the bronze HP laptop which was being used by Seibert. During that process, the system placed all of the files in a temporary folder. After the upgrade was completed, the files were placed back in the active portion of the computer and the temporary folders were deleted. According to Stieghorst, a review of these deleted folders reflected a large number of folders apparently related to the

---

[51] *See* docket numbers 136-1 and 136-2.

Cedar Rapids project, but there were no files or documents found in the folders.[52] In other words, the folders existed on the laptop as of May 6, 2010, and were empty when the forensic examination occurred on February 16, 2011. That is, the "folders were there, but no documents existed."

According to Stieghorst, the existence of an extensive folder structure, but with the folders empty, "would be very difficult to explain." Stieghorst testified that there were "well over 50 folders" in the folder structure, and that "creating a folder structure that large with no files would be unheard of in anything that I've experienced before." On cross-examination, Stieghorst was asked by Seibert whether it was possible that one "could take a file structure like that and set it up so that you would end up wanting to utilize it for another property in the future." Stieghorst conceded that "I could see that being a possible use."

### 2.  *Rocketfish Backup Drive*

One of the external hard drives produced by Seibert for examination was a "Rocketfish" hard drive, which was used to back up other devices used by JFS. According to Stieghorst, he found files that had been moved to the "recycle bin" of that drive, and files that were "completely deleted" from the drive. The create date, modified date, and access date on these files was February 15, 2011, the day before the hard drive was produced for forensic examination. Stieghorst opined that thousands of documents had been placed in the recycle bin or completely deleted from the backup drive on the day before the forensic analysis. Stieghorst was able to recover some of those documents, but not all of them.

In response, Seibert testified that the screen on the black laptop had "split," and he took it to the Geek Squad at Best Buy for repair. According to Seibert, they had to "send it in for analysis," so they gave Seibert a "loaner." When the black laptop came back,

---

[52] Stieghorst testified that some of the folders were titled Cedar Rapids Operations, Cedar Rapids Drawings, and Cedar Rapids Investors.

13

Best Buy transferred the information which Seibert had put on the loaner computer back on to the black laptop. Because of this, there were "different sets of back up information" on the Rocketfish hard drive. Accordingly, Seibert asked Best Buy to consolidate the information. Seibert testified that "I did not pick up that hard drive until the day before the analysis was done." Seibert denied that he purposefully tried to delete any files on the day before the drive was surrendered for analysis.

### 3. *Simpletech – Silver Hard Drive*

Next, Stieghorst testified that the "master folder" on the Simpletech – silver external hard drive was deleted and many of the files were not recoverable. Of the files that were recovered, Stieghorst did a "sampling" to determine if the files were located elsewhere on the systems which had been produced. Stieghorst found duplicates of some files, although they were not in the same folder structure. However, there were also files that "there were absolutely no duplicates of." In other words, there were files which were deleted, could not be recovered, and, based on the sampling, may not be duplicated elsewhere.

### 4. *Orphan Files*

An "orphan file" is one that is contained in the system, but its folder no longer exists or has been deleted. In other words, the file exists, "but it doesn't know where the home of that file is." According to Stieghorst, a few orphan files were recovered. There were other files where the structure of the file still existed, but the data contained in the file no longer existed. There were also files with a structure, but the data inside was unintelligible "garbage." Stieghorst testified that he was able to recover hundreds of orphan files, but he "wouldn't know how many orphan files there would be that wouldn't be recoverable because the structure would be gone."

### 5. *Deleted Emails*

Stieghorst testified that there were also emails that had been deleted. Some of the emails were recovered fully, some of the emails had a structure but none of the content, and some of the emails had a structure but contained "garbage text."

In analyzing the emails, Stieghorst noticed an "unusual thing." In 2010, Julie Dehmer (Seibert's secretary) "sent an e-mail which had the title of Cedar Rapids in it, and then immediately the next day deleted that e-mail out of her sent box." Emails before and after that email were not deleted from the sent box. That is, it appeared that this particular email was "targeted to be deleted."

## V. DISCUSSION

In support of their argument that a default should be entered against Seibert for the intentional destruction of evidence, Plaintiffs cite 27 cases, but only one by the Eighth Circuit Court of Appeals. In *Stevenson v. Union Pacific R.R. Co.*, 354 F.3d 739 (8th Cir. 2004), the Court concluded that the district court abused its discretion when it submitted an adverse inference jury instruction against the defendant for its prelitigation destruction of inspection records, but was within its discretion when it submitted an adverse inference jury instruction against the defendant for its destruction of maintenance and inspection records after the commencement of litigation. *Id.* at 749. Regarding the prelitigation destruction of evidence pursuant to a routine document retention policy, the Court concluded that "there must be some indication of an intent to destroy the evidence for the purpose of obstructing or suppressing the truth in order to impose the sanction of an adverse inference instruction." *Id.* at 747 (citing *Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1112 (8th Cir. 1988)). After the litigation was commenced, however, Union Pacific could not rely on its routine document retention policy "as a shield." *Id.* at 750.

> Sanctioning the ongoing destruction of records during litigation and discovery by imposing an adverse inference instruction is supported by either the court's inherent power or Rule 37 of the Federal Rules of Civil Procedure, even absent an explicit bad faith finding, and we conclude that the giving of an

15

> adverse inference instruction in these circumstances is not an
> abuse of discretion.

*Id.*

More recently, in *Gallagher v. Magner*, 619 F.3d 823 (8th Cir. 2010), the Eighth Circuit addressed the destruction of emails pursuant to routine document retention policies after the action was commenced. The plaintiffs moved for sanctions due to the defendant's failure to place a litigation hold on the relevant documents. The magistrate judge denied the motion for sanctions, "explaining that Appellants failed to demonstrate prejudice, i.e., that the material would have contained pertinent evidence." *Id.* at 843. After further "extensive discovery," the plaintiffs renewed their motion for sanctions. The magistrate judge denied the renewed motion for sanctions "because Appellants still failed to demonstrate prejudice" and for the further reason that "Appellants did not demonstrate that the City intentionally destroyed or withheld evidence to suppress the truth." *Id.* While recognizing that "[d]istrict courts have the inherent power to 'fashion an appropriate sanction for conduct which abuses the judicial process,'" the Eighth Circuit concluded that the district court acted within its discretion by refusing to impose sanctions. *Id.* at 844.

> Appellants contend that the City has not produced all email files from before December 2005, although the record on this point is not very clear. Giving Appellants the benefit of the doubt, we assume the City has not produced some of the requested email files from City employee accounts. Appellants argue that the destroyed email files would have supported their claim of intentional discrimination. However, Appellants offer no support for such speculation; there is no basis for inferring that the missing emails would be of a different character than the emails already recovered and produced. Therefore, we agree that Appellants have not demonstrated the requisite prejudice.

*Id.* The Court noted, however, that "critical to our decision is the magistrate judge's conclusion that the City did not intentionally destroy or withhold evidence in an attempt to suppress the truth." *Id.* at 844-45.

In *Bakhtiari v. Lutz*, 507 F.3d 1132 (8th Cir. 2007), the Court found that the district court did not abuse its discretion in refusing to sanction the defendant for the alleged spoliation of evidence. The plaintiff contended that large portions of his email account were missing. In concluding that the request for sanctions was properly denied, the Court noted that "[a] spoliation sanction requires a finding that a party intentionally destroyed evidence with a desire to suppress the truth." *Id.* at 1135. Citing *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032 (8th Cir. 2007), the Court stated that the "ultimate focus" for imposing spoliation sanctions is "the intentional destruction of evidence indicating a desire to suppress the truth, not the prospect of litigation." *Id.*

The Court recognizes that a party's intent "is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Greyhound Lines*, 485 F.3d at 1035 (citing *Morris v. Union Pac. R.R.*, 373 F.3d 896, 902 (8th Cir. 2004)). However, the evidence here does not support a finding that Seibert intentionally destroyed evidence in a desire to suppress the truth. JFS was a small company and it appears that Seibert is unsophisticated in the requirements of litigation and preservation of documents. Seibert testified that after receiving the litigation hold/spoliation letter from Plaintiffs, he instructed his employees to backup the information contained on their computers. The record is silent regarding what guidance, if any, JFS and Seibert received from their attorneys in this regard.

JFS and Seibert initially produced approximately 875 documents. In response to requests for production, they later produced an additional 2,700 pages, which, according to Plaintiffs, represent 370 additional documents, including 145 emails. Seibert's attorneys represented that they had produced all non-privileged documents at that time. Seibert subsequently produced seven computers/laptops, ten internal/external hard drives, and twenty-three compact discs for inspection and copying. Based upon search terms agreed

to by the parties, this yielded 34,000 documents which are potentially relevant to the development of the motel in Cedar Rapids, Iowa.

To warrant a default judgment against Seibert as a sanction for spoliation of evidence, "there must be a finding of intentional destruction indicating a desire to suppress the truth." *Menz v. New Holland North America, Inc.*, 440 F.3d 1002, 1006 (8th Cir. 2006) (citing *Stevenson*, 354 F.3d at 746). In *Menz*, the Court concluded that the district court abused its discretion when it dismissed the action for plaintiff's spoliation of evidence, without first determining whether the plaintiff acted in bad faith. *Id.* at 1007. Furthermore, if the district court determined on remand that the plaintiff acted in bad faith, it must also determine whether the spoliation "actually prejudiced the appellees . . . before a sanction for spoliation would be warranted." *Id.*

Other Eighth Circuit cases suggest that an adverse inference instruction is warranted only if there is some evidence that the records would have favored the movant's case. *See, e.g., Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 811 (8th Cir. 2005) ("An adverse inference is appropriate only when, among other things, the party seeking the inference can show that once-extant records were destroyed 'to suppress the truth,' and that the records would have favored its case."); *Groves v. Cost Planning & Mgmt. Int'l, Inc.*, 372 F.3d 1008, 1010 (8th Cir. 2004) ("Groves has not shown that the correspondence would have favored her case and that CPMI destroyed the records to suppress the truth.").

In *Leon v. IDX Systems Corp.*, 464 F.3d 951 (9th Cir. 2006), a case cited by Plaintiffs in their brief, the Court applied a 5-factor test in determining whether the "harsh sanction" of dismissal was appropriate. *Id.* at 958. According to the Ninth Circuit, the Court should consider "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.* (quoting *Anheuser-Busch, Inc. v. Natural*

*Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)). The first two factors appear to have no application here. Regarding the third factor, the Court believes the risk of prejudice to Plaintiffs is small. In addition to the 875 documents produced by JFS and Seibert in their initial disclosures, and the 370 additional documents produced in response to requests for production, Plaintiffs represented in an earlier motion to compel that they had approximately 5,530 documents of their own.[53] In addition, Plaintiffs obtained approximately 3,890 documents and emails from third parties, including the architect, the contractor, the City of Cedar Rapids, and the AmericInn Hotels corporate office.[54] A search of JFS's and Seibert's computers generated approximately 34,000 documents which are potentially relevant. It would seem that Plaintiffs have plenty of information upon which to pursue their claims. Regarding the fourth and fifth factors identified in *Leon*, there is a public policy favoring the disposition of this case on its merits, and a less drastic sanction is available. Specifically, the district court may, depending on the evidence introduced at the time of trial, submit an adverse inference jury instruction based on the spoliation of documents.

While there is evidence that some documents were deleted after service of the litigation hold/spoliation letter, there is no proof that Seibert intentionally destroyed documents for the purpose of obstructing or suppressing the truth. *Bakhtiari*, 507 F.3d at 1135. Furthermore, it cannot be determined on this record that the deleted documents would likely support Plaintiffs' claims. *Gallagher*, 619 F.3d at 844. Simply put, to support the ultimate sanction of default judgment against Seibert, I believe a stronger showing of bad faith is required. Accordingly, I recommend that the motion for sanctions be denied.

---

[53] *See* Plaintiffs' Motion to Compel (docket number 96), ¶ 5 at 2.

[54] *Id.*

## VI. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the Motion for Sanctions (docket number 136) filed by the Plaintiffs on July 28, 2011 be **DENIED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on August 23, 2011.*

DATED this 27th day of September, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA