**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

CEDAR RAPIDS LODGE & SUITES,
LLC, et al.,

    Plaintiffs,

vs.

JFS DEVELOPMENT, INC., f/k/a JCS
DEVELOPMENT, INC., et al.,

    Defendants.

No. 09-CV-175-LRR

**ORDER**

*TABLE OF CONTENTS*

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II. RELEVANT FACTS AND PROCEDURAL BACKGROUND* . . . . . . . . . . . *2*

*III. STANDARDS OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

*IV. LEGAL STANDARDS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *A.     Contempt of Court* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *B.     Attorney Fees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

*V. OBJECTIONS TO THE REPORT AND RECOMMENDATION* . . . . . . . . *7*
    *A.     Contempt of Court* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
    *B.     Attorney Fees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*

*VI. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

## *I. INTRODUCTION*

    The matters before the court are Plaintiffs' "Motion for Contempt of Court Against Defendant John F. Seibert" ("Motion for Contempt") (docket no. 135) and John F. Seibert's pro se Objections (docket no. 148) to United States Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 146). Judge Scoles recommends that the undersigned grant Plaintiffs' Motion for Contempt and hold Seibert in contempt for

failing to comply with Judge Scoles's "Order Granting Motion to Compel Production" ("Order to Compel") (docket no. 103). Judge Scoles recommends that the court enter judgment in favor of Plaintiffs and against Seibert in the amount of $77,928.68 for the cost of the forensic examination and reasonable attorney fees and costs associated with obtaining the documents related to the Order to Compel.

## II. RELEVANT FACTS AND PROCEDURAL BACKGROUND

On December 3, 2009, Plaintiffs filed an eighty-seven-page, eighteen-count Complaint (docket no. 1). The Complaint arises from the development of an AmericInn hotel ("Hotel") in Cedar Rapids, Iowa. Plaintiffs allege that Defendants fraudulently induced them to invest in the Hotel and proceeded to mishandle the financing, construction and/or management of the Hotel. Plaintiffs seek monetary damages and declaratory relief.

Since the Complaint was filed, Defendants Marc Gabrielson and Ted Vosburg have filed for bankruptcy, *see* docket nos. 130 & 132, and the Clerk of Court entered a default against JFS Development, Inc. ("JFS") (docket no. 101). A jury trial is scheduled to commence before the undersigned in January of 2012. On October 29, 2010, Brady & O'Shea, P.C. filed a "Motion of Attorneys Representing John Seibert and JFS Development, Inc. to Withdraw as Counsel" ("Motion to Withdraw") (docket no. 86) due to unpaid attorney fees. On December 6, 2010, Judge Scoles granted the Motion to Withdraw (docket no. 95).

On January 13, 2011, Plaintiffs filed a "Motion to Compel Production of Defendants [Seibert's] and [JFS's] Computer Systems and Hardware for Inspection and Copying" ("Motion to Compel") (docket no. 96). On January 27, 2011, Judge Scoles held a hearing on the Motion to Compel. *See* docket no. 102. Robert H. Miller ("Miller") and Kevin J. Visser ("Visser") represented Plaintiffs at the hearing, and Seibert did not appear and was not represented. *See id.* On February 1, 2011, Judge Scoles entered the Order to Compel, granting the Motion to Compel and ordering Seibert and JFS to produce their

2

computer systems and hardware for inspection and copying at their expense. Seibert eventually complied with the Order to Compel after some logistical disputes. The bill for the forensic computer examination totaled $43,694.93. *See* docket no. 135-9 (describing the services performed and the total charges). Plaintiffs submitted the bill to Seibert for payment, but Plaintiffs subsequently paid the full balance after Seibert failed to pay.

On July 28, 2011, Plaintiffs filed the "Motion for Contempt of Court Against Defendant John F. Seibert Pursuant to the Court's February 1, 2011 Order and Fed. R. Civ. P. 37(b)(2)(A)(viii)" ("Motion for Contempt") (docket no. 135). On August 23, 2011, Judge Scoles held a hearing on the Motion for Contempt. *See* docket no. 144. At the hearing, attorneys Miller, Visser and Brian Thomas represented Plaintiffs, Defendant Seibert appeared personally and represented himself and attorney Kevin Caster appeared on behalf of Defendant Lightowler Johnson Associates, Inc. *See id.* On September 1, 2011, Judge Scoles filed the Report and Recommendation. On September 14, 2011, Seibert filed his Objections. On September 22, 2011, Plaintiffs filed a Reply (docket no. 152) to the Objections.

In the Motion for Contempt, Plaintiffs claim that Seibert is in contempt of court because he did not pay the forensic computer examination bill as required by the Order to Compel. Plaintiffs ask the court to order Seibert to pay both the $43,694.93 bill for the for the computer examination and the $34,233.75 that Plaintiffs incurred in costs and attorney fees while obtaining the relevant documents. *See* docket nos. 135-10 & 135-11 (describing the attorneys' services and charges). Plaintiffs request in their Brief in Support of the Motion for Contempt (docket no. 135-22) that the court order Seibert to pay Plaintiffs a total of $77,928.68 within 15 days or be subject to a bench warrant for Seibert's immediate arrest and incarceration until the payment is made. At the time of the hearing, Plaintiffs alternatively requested that the court enter judgment against Seibert for $77,928.68. In his Objections, Seibert claims that his failure to pay the bill is not willful,

3

he has no money to pay the bill and he should not have to pay for either the forensic analysis or the Plaintiffs' attorney fees. The matter is now fully submitted and ready for decision.

### III. STANDARDS OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). It is reversible error for the district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *See Lothridge*, 324 F.3d at 600; *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996). However, the court reviews portions of the report and recommendation for which there are no objections for plain error only. *See Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994).

### IV. LEGAL STANDARDS

#### A. Contempt of Court

The Plaintiffs in this case are asking the court to hold Seibert in civil contempt. "[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 330-32 (1947)). One of the purposes of the contempt power is "to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." *Chi. Truck Drivers v. Bhd.*

*Labor Leasing*, 207 F.3d 500, 504 (8th Cir. 2000).

"The contempt power is a most potent weapon, and therefore it must be carefully and precisely employed." *Indep. Fed'n of Flight Attendants v. Cooper*, 134 F.3d 917, 920 (8th Cir. 1998) (quoting *Mahers v. Hedgepeth*, 32 F.3d 1273, 1275 (8th Cir. 1994)). Therefore, "[j]udicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United Mine Workers*, 330 U.S. at 303-04; *see also Bernard v. Am. Cyanamid Co.* (*In re Tetracycline Cases*), 927 F.2d 411, 413 (8th Cir. 1991) (stating the same two purposes for civil contempt). These purposes differ from criminal contempt, which courts use as a punishment for disobedience. *United States v. Waggoner*, 103 F.3d 724, 727 (8th Cir. 1997). If a compensatory sanction is appropriate, the purpose would be to "restor[e] [the injured] party to the position it would have held had the court's order been obeyed." *Hartman v. Lyng*, 884 F.2d 1103, 1106 (8th Cir. 1989) (quoting *In re Grand Jury Suubpoena of June 12, 1986*, 690 F. Supp. 1451, 1453 (D. Md. 1988)) (internal quotation marks omitted).

A party bringing a contempt action must prove, "by clear and convincing evidence, that the alleged contemnors violated a court order." *Chi. Truck Drivers*, 207 F.3d at 505. Unlike a criminal contempt showing, it is not necessary for the moving party to show that the violation of the court order was willful because civil contempt is remedial. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). Therefore, the violating party's intent is irrelevant. *Id.*

If the party seeking contempt meets the clear and convincing evidentiary standard, the burden shifts to the alleged contemnor to assert any defenses, including inability to comply. *See Chi. Truck Drivers*, 207 F.3d at 505. In claiming an inability to comply, parties challenging a motion for contempt must establish: "(1) that they were unable to

comply, explaining why categorically and in detail; (2) that their inability to comply was not self-induced; and (3) that they made in good faith all reasonable efforts to comply." *Id.* at 506 (internal quotation marks omitted) (citations omitted).

In exercising its contempt power, a court may exercise discretion in determining the proper remedy for a contempt violation. *Hartman*, 884 F.2d at 1107. This discretion includes determining what "'relief . . . is necessary to effect compliance with its decree. The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief.'" *Id.* (quoting *McComb*, 336 U.S. at 193).

A contempt action is not the appropriate proceeding during which to attack the validity of the order that was disobeyed. According to the Supreme Court,

> "[i]t would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The procedure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience."

*United States v. Rylander*, 460 U.S. 752, 756-57 (1983) (quoting *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948)). "If the order is not obeyed, the party in violation may be held in contempt, even if he or she later succeeds in getting the order overturned on appeal." *Brown v. Ramsay* (*In re Ragar*), 3 F.3d 1174, 1180 (8th Cir. 1993). Regardless of the validity of the order, a party has "no right to take the law into his own hands and disobey the order." *Id.* at 1181.

### *B. Attorney Fees*

The Plaintiffs also request that Seibert pay the reasonable attorney fees and costs that they incurred while obtaining the information outlined in the Motion to Compel. "If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Fed. R. Civ. P. 37(a)(3)(A). If the

court grants a motion to compel, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Id.* at 37(a)(5)(A). District courts have "broad authority to impose sanctions for failure to respond to discovery requests or to disclose information required by Fed R. Civ. P. 26(a)." *Collins v. Burg*, 169 F.3d 563, 565 (8th Cir. 1999).

A party cannot excuse failing to respond to discovery requests by claiming that his or her attorneys were responsible for the noncompliance. "'It is a well-established principle that a party is responsible for the actions and conduct of his [or her] counsel and that, under appropriate circumstances, dismissal or default may be entered against a party as a result of counsel's actions.'" *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1010 (8th Cir. 1993) (alteration in original) (quoting *Boogaerts v. Bank of Bradley*, 961 F.2d 765, 768 (8th Cir. 1992)) (internal quotation marks omitted). In a case where counsel was responsible for discovery violations, it was "of no consequence that the discovery abuse perpetrated was by counsel rather than the plaintiff-client." *Boogaerts*, 961 F.2d at 768.

Furthermore, a party that appears pro se cannot claim that he or she did not know the law or could not comply with court procedures. "[P]ro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984).

### *V. OBJECTIONS TO THE REPORT AND RECOMMENDATION*

In his Objections, Seibert asks the court to: (1) reject Judge Scoles's recommendation that he be held in contempt and (2) reject Judge Scoles's recommendation that Seibert pay Plaintiffs' attorney fees.

### *A. Contempt of Court*

Seibert makes several claims in his Objections to support his argument that he should not be held in contempt of court. First, Seibert makes multiple arguments

regarding the validity of the Motion to Compel, asserting that he was unaware of the hearing on the Motion to Compel, the Motion to Compel would not have been granted if he had timely objected, the costs Plaintiffs charged for the forensic analysis were unreasonable, Seibert did not have the ability to properly examine Plaintiffs' expert witness and Seibert was not aware of his rights regarding the Motion to Compel because he is unrepresented. None of these claims are relevant to the issue of contempt, however. Instead, they address the validity of the Order to Compel. Because the court cannot consider arguments challenging the validity of the original order in evaluating the Motion for Contempt, Seibert's arguments regarding the Order to Compel are irrelevant. *See Rylander*, 460 U.S. at 756-57.

Second, Seibert claims that he did not willfully disobey the Order to Compel. This argument is relevant to the pending "Motion for Sanctions Against Defendant John F. Seibert for Spoliation of Evidence" ("Motion for Sanctions") (docket no. 136) and not the Motion for Contempt. Furthermore, the court agrees with Judge Scoles's determination that willfulness is not an element of civil contempt due to the remedial, not punitive, nature of the remedy. *See McComb*, 336 U.S. at 191.

Third, Seibert claims that he does not have the financial means to hire an attorney, let alone pay the amount Judge Scoles recommends. This argument, however, is without merit because Seibert has not produced any evidence that shows categorically and in detail that he is financially unable to comply with the Motion to Compel, that his failure to pay is not self-induced or that he made good faith efforts to comply. *See Chi. Truck Drivers*, 207 F.3d at 506. Therefore, Seibert has not met his burden to show an inability to comply with the Motion to Compel.

For the reasons discussed above, the court agrees with Judge Scoles's finding that Seibert disobeyed the Order to Compel by failing to pay the cost of the forensic analysis as required. Furthermore, Seibert has failed to show an inability to comply with the Order

8

to Compel. The court therefore finds Defendant John F. Seibert in contempt of court and shall adopt Judge Scoles's recommendation on the issue. The court also agrees with Judge Scoles's recommendation that the court should enter judgment against Seibert for the amount Plaintiffs requested instead of making Seibert subject to a bench warrant. Thus, the court shall enter judgment in favor of Plaintiffs and against Seibert for the amount of the forensic analysis, $43,694.93.

### B. Attorney Fees

Seibert also makes several claims to support his argument that he should not have to pay Plaintiffs' attorney fees. First, he claims that he provided all relevant documents to his former attorneys and the attorneys failed to provide Plaintiffs with the documents. This argument is without merit, however. It was Seibert's responsibility to ensure that the Plaintiffs received all requested documents, and whether his attorneys failed to pass the requested documents on to Plaintiffs is irrelevant to his duty to comply with discovery requests. *See Comiskey*, 989 F.2d at 1010. Seibert also has not produced any evidence to suggest that his former attorneys were responsible for the failure to produce documents.

Second, Seibert claims that, after his attorneys withdrew, his failure to respond to Plaintiffs' discovery requests was the result of Plaintiffs' "east coast tactics" and their "inability to work amicably with the Defendants." Objections at 2. This argument is relevant to the Motion for Sanctions and not the Motion for Contempt. Furthermore, the Order to Compel required Seibert to comply with Plaintiffs' request, regardless of whether the relationship between the parties was amicable. Therefore, the demeanor of the parties is not relevant in determining whether Seibert should reimburse Plaintiffs for the costs they incurred while attempting to obtain information from him.

Finally, Seibert again argues that he is at a disadvantage because he appears pro se and that he failed to object to the reasonableness of the attorney fees at the hearing because he did not understand his rights. Judge Scoles, however, made it clear to Seibert that he

would be held to the same standard as counsel, and, in this situation, Seibert is not excused from complying with the court's orders and the Federal Rules of Civil Procedure because he appears pro se. *See* Ruling on Pretrial Motions, docket no. 95, at 6 n.1; *see also Burgs*, 745 F.2d at 528. Furthermore, the court agrees with Judge Scoles's determination that the attorney fees are reasonable. Plaintiffs incurred the attorney fees and costs in an effort to obtain documents and evidence that the court ordered Seibert to provide.

Based on the foregoing, the court adopts Judge Scoles's recommendation that Seibert reimburse Plaintiffs for their reasonable attorney fees. Therefore, the court shall enter judgment in favor of Plaintiffs and order Seibert to pay $34,233.75 for attorney fees. With the cost of the forensic analysis and the attorney fees combined, the court shall order Seibert to pay a total of $77,928.68 to Plaintiffs.

## VI. CONCLUSION

It is **HEREBY ORDERED THAT**:

(1) Defendant Seibert's Objections (docket no. 148) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 146) is **ADOPTED**;

(3) The Motion for Contempt (docket no. 135) is **GRANTED**; and

(4) **JUDGMENT IS ENTERED** in the amount of $77,928.68 in favor of Plaintiffs.

**DATED** this 3rd day of October, 2011.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA