# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

CEDAR RAPIDS LODGE & SUITES, LLC et al.,

    Plaintiffs,

vs.

JFS DEVELOPMENT, INC., f/k/a JCS DEVELOPMENT, INC., et al.,

    Defendants.

No. 09-CV-175-LRR

**ORDER**

_____

## TABLE OF CONTENTS

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   RELEVANT PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    RICO Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        1.   Actual damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
            a.   Fraud in the inducement of investment.. . . . . . . . . . . 3
            b.   Construction remediation and construction administration-related damages.. . . . . . . . . . . . . . . . 4
            c.   Undercapitalization and misappropriation of funds. . . . . 6
            d.   Summary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        2.   Treble damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        3.   Prejudgment interest. . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        4.   Postjudgment interest. . . . . . . . . . . . . . . . . . . . . . . . . . 9
        5.   Attorney's fees and costs. . . . . . . . . . . . . . . . . . . . . . . 10
        6.   Collateral estoppel in bankruptcy. . . . . . . . . . . . . . . . . . 10
    B.    Damages for State Law Claims.. . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# I. INTRODUCTION

The matter before the court is Plaintiffs' "Motion for Entry of Default Against Defendant John F. Seibert" ("Motion for Default Judgment") (docket no. 255).

# II. RELEVANT PROCEDURAL HISTORY

On August 24, 2012, the Clerk of Court entered default against Seibert. *See* Default Entry (docket no. 256). The court incorporates the factual and procedural background from its August 28, 2012 Order (docket no. 257) regarding the Motion for Default Judgment. On September 27, 2012, the undersigned held an evidentiary hearing to determine damages. Attorneys Kevin Visser and Robert Miller appeared on behalf of Plaintiffs. John F. Seibert did not appear. *See* Notice (docket no. 264) (notifying the court that Seibert would not appear).

Plaintiffs assert the following claims against Seibert: (1) civil racketeering in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a-c) (Count I); (2) conspiracy to engage in civil racketeering in violation of RICO (Count II); (3) intentional misrepresentation and/or fraud brought by individual plaintiffs (Count VIII); (4) fraudulent nondisclosure brought by individual plaintiffs (Count IX); (5) intentional misrepresentation and/or fraud brought by Cedar Rapids Lodge & Suites, LLC ("CRLS") (Count X); (6) fraudulent nondisclosure brought by CRLS (Count XI); (7) negligent misrepresentation and/or omission brought by individual plaintiffs (Count XII); (8) negligent misrepresentation and/or omission brought by CRLS (Count XIII); (9) breach of the fiduciary duty of care brought by CRLS (Count XIV); (10) breach of the fiduciary duty of loyalty brought by CRLS (Count XV); (11) violation of the Consumer Fraud Act, Iowa Code § 714.16, brought by individual plaintiffs (Count XVI); (12) violation of the Consumer Fraud Act brought by CRLS (Count XVII); and (13) waste and/or misappropriation of corporate assets brought by CRLS (Count XVIII).

### III. ANALYSIS

When a defendant is in default, its "liability to the plaintiff is deemed established and the plaintiff is not required to establish [its] right to recover." *Brown v. Kenron Aluminum & Glass Corp.*, 477 F.2d 526, 531 (8th Cir. 1973). "When a default judgment is entered on a claim for an indefinite or uncertain amount of damages, facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proved in a supplemental hearing or proceeding" by a preponderance of the evidence. *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001).

The court will first assess the actual damages Plaintiffs suffered as a result of Seibert's RICO violations. The court will then consider whether the Plaintiffs are entitled to treble damages, prejudgment interest, postjudgment interest, attorney fees and costs. The court will then consider damages under Plaintiffs' state law claims.

#### A. RICO Damages

##### 1. Actual damages

Plaintiffs claim three categories of damages against Seibert: "(1) fraud in the inducement of investment damages; (2) construction remediation and construction-administration-related damages; and (3) undercapitalization and misappropriation of funds damages." Plaintiffs' Pre-Hearing Brief on Damages ("Damages Brief") (docket no. 262) at 10-11.

###### a. Fraud in the inducement of investment

At the hearing, Ron Nielsen, a certified public accountant and certified fraud examiner with Clifton Gunderson, LLP, testified regarding the damages Plaintiffs suffered as a result of Seibert's fraud in the inducement to invest. Nielsen's report was admitted into evidence as Exhibit 1 (docket no. 206-1). In his report, Nielsen lists the initial investment contributions and capital call contributions for all of the CRLS investors. Only the plaintiffs who do not wish to remain involved with the operation of CRLS upon the

conclusion of the instant action are seeking damages in this category. Their contributions are as follows:[1]

|  | Initial Investment | March 2007 Capital Call | May 17, 2009 Capital Call | Total Capital Call Contribution | Total |
|---|---|---|---|---|---|
| Jacob L. Sailer | $58,000 | $7,502 | $13,640 | $21,142 | $79,142 |
| Jerred Ruble | $52,500 | $4,532 | $8,240 | $12,772 | $65,272 |
| Ray Mulford | $50,000 | $6,468 | $11,760 | $18,228 | $68,228 |
| Ronald J. Sailer | $25,000 | $3,234 | $5,880 | $9,114 | $34,114 |
| Robert Kopriva | $50,000 | $0 | $0 | $0 | $50,000 |

Based on these figures, the court finds that Seibert fraudulently induced the listed plaintiffs to invest a total of **$296,756** in CRLS. The court shall award Plaintiffs this amount for fraud in the inducement to invest.

### b. *Construction remediation and construction administration-related damages*

At the hearing, several witnesses testified regarding Plaintiffs' construction remediation and construction administration-related damages. Jonathan Nehmer, an architect with Jonathan Nehmer & Associates, Inc., testified regarding architectural, design and other issues with the hotel, not including electrical and mechanical issues. Nehmer's report was admitted as Exhibit 4 (docket no. 266-4). Nehmer reviewed the design team's documents for building the hotel, the AmericInn standards and the pay applications and draw information for paying the contractor. Nehmer also visited the CRLS hotel in December 2010. Nehmer's report contains cost estimates for the

---

[1] The court notes that, in the Damages Brief, Plaintiffs improperly calculated the initial investment and total capital call contributions for Jerred Ruble. The court calculated these totals based on the figures in Nielsen's report. The court notes that Ruble's initial investment was $35,000 plus another $17,500 when he bought shares from his former business partner. *See* Damages Brief at 11. Additionally, the court declines to award damages for Kopriva's capital call contributions, because Nielsen's report lists these contributions as unpaid. Nielsen Report, Exhibit 4 at 7, 9.

4

remediation or installation of twenty-one items within the hotel. Nehmer concludes that the total cost for remediating the listed items is **$1,288,671**.

Brion Koning, an acoustical consultant with Cavanaugh Tocci Associates, Inc., testified regarding the plumbing noise transmitted between guest rooms within the hotel. Koning's report was admitted as Exhibit 2 (docket no. 266-2). He did not testify to an amount of damage related to the plumbing noise; however, the damages for remediation of the noise transfer between guest rooms are included in Nehmer's report.

Thomas Reilly, a professional engineer with Salem Engineering, Inc., testified regarding the hotel's electrical and mechanical issues. Reilly's report was admitted as Exhibit 3 (docket no. 266-3). In his report, Reilly states that he found fifty-three separate hotel items requiring corrective measures. Reilly states that the total construction costs for remediating these items is $626,100. Reilly also states in his report that the design costs for the work would be 15-20% of the construction costs and that the project management costs would be approximately 10% of the construction costs. Therefore, the court finds that $109,567.50, 17.5% of the construction costs, is the appropriate measure of damages for the design costs and $62,610, 10% of the construction costs, is the appropriate measure of damages for the project management costs. Thus, the total amount of damages relating to the hotel's electrical and mechanical issues is **$798,277.50**.

Nielsen also testified regarding construction costs damages. In his report, Nielsen states that the cost of constructing the hotel exceeded the construction cost maximum in the contract by $315,555.14. Nielsen also states that the cost for improvements and repairs to bring the building up to code and receive a final Certificate of Occupancy is $34,000. The total amount for these damages is **$349,555.14**.[2]

---

[2] Plaintiffs also request $33,682.00 in legal costs associated with obtaining a Certificate of Occupancy in 2009. However, this figure is not contained in either Nielsen's testimony or his report. The only reference to legal costs relating to the Certificate of
(continued…)

5

Larry Steinbronn, a building envelope consultant with Shive-Hattery, Inc., testified regarding the cost to remediate the mold found in the hotel. Steinbronn's report was admitted as Exhibit 5 (docket nos. 266-5 through 266-10). In his report, Steinbronn states that the cost to remediate the mold for the ground floor is $130,000. Nehmer testified during the hearing that, for rooms requiring mold remediation, the cost for replacing the furniture, fixtures and equipment would be $7,500 per room. Nehmer also testified that the cost for reconstructing the rooms would be $10,000 per room. Because there are twenty rooms on the first floor, Plaintiffs request a total of $150,000 to replace the furniture, fixtures and equipment in the affected rooms and $200,000 to reconstruct the affected rooms. Plaintiffs also request $64,800 in damages for lost revenue during the mold remediation. The lost revenue figure is based on occupancy and profit statistics contained in Victoria Richman's expert report admitted into evidence during the court's February 13, 2012 hearing. *See* Richman Report, Exhibit 8 (docket no. 225-14) at 12. Thus, the total damages amount for mold remediation is **$544,800**.

Based on the above evidence, the court shall award Plaintiffs a total of **$2,981,303.64** for construction remediation and construction administration-related damages.

### c. *Undercapitalization and misappropriation of funds*

Nielsen also analyzed Seibert's undercapitalization of the hotel and misappropriation of funds through undocumented loans. In his report, Nielsen states that there is a total of $33,006.10 in unpaid penalties and interest as a result of Seibert's failure to pay AmericInn franchise fees. Additionally, Nielsen found a total of $376,231 in undocumented loan payments that Seibert authorized. Nielsen further states that Defendants failed to pay

---

²(...continued)
Occupancy is in Nielsen's discussion of the May 17, 2009 capital call, which the court assesses in Parts III(A)(1)(a) and III(A)(1)(c).

$250,000 in initial capital contributions to CRLS. Finally, Nielsen's figures show that Plaintiffs[3] paid the following amounts in capital call contributions:

|  | March 2007 Capital Call | May 17, 2009 Capital Call |
|---|---|---|
| James T. Rymes | $12,947 | $23,540 |
| Pamela J. Cobb, Trustee | $4,532 | $8,240 |
| Michael and Rhonda Coborn | $14,498 | $39,720 |
| Scott & Julie Shisler | $6,468 | $11,670 |
| *Total* | *$38,445* | *$83,170* |

The total amount of these capital call contributions is $121,615.

Based on the above evidence, the court shall award Plaintiffs a total of **$780,852.10** for Seibert's undercapitalization and misappropriation of funds.

### d. Summary

After thoroughly reviewing the record, the court finds it appropriate to grant Plaintiffs the relief they seek. The court finds that Plaintiffs have proven by a preponderance of the evidence that they are entitled to recover **$4,058,911.74** in actual damages on their RICO claims.

## 2. Treble damages

Plaintiffs maintain that any damages awarded under RICO should be automatically trebled. *See* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter . . . shall recover threefold the damages he sustains . . . ."); *see also H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 233

---

[3] The court addressed the capital call contributions from Plaintiffs who do not wish to remain involved in the hotel in Part III(A)(1)(a). Thus, these damages reflect the capital call contributions from Plaintiffs who wish to remain involved in the hotel after the completion of the lawsuit.

7

(1989) ("[A] person found in a private action to have violated RICO is liable for treble damages . . . ."); *Jones v. Phipps*, 39 F.3d 158, 161 (7th Cir. 1994) (upholding a default judgment award of treble damages under RICO). The court finds that, under RICO, Plaintiffs are entitled to treble damages. Thus, the court shall award Plaintiffs a total of **$12,176,735.22** in damages.

### 3. *Prejudgment interest*

Plaintiffs argue that they are entitled to prejudgment interest on the full treble damages amount. Plaintiffs argue that the court should award prejudgment interest because treble damages are not primarily punitive in nature.

"Prejudgment interest serves 'to reimburse the claimant for the loss of the use of its investment or its funds from the time of the loss until judgment is entered.'" *Am. Milling Co. v. Brennan Marine, Inc.*, 623 F.3d 1221, 1226 (8th Cir. 2010) (quoting *Arco Pipeline Co. v. SS Trade Star*, 693 F.2d 280, 281 (3d Cir. 1982)). "'[P]rejudgment interest should ordinarily be granted unless exceptional or unusual circumstances exist making the award of interest inequitable.'" *Masters v. UHS of Del., Inc.*, 631 F.3d 464, 475 (8th Cir.) (alteration in original) (quoting *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 752 (8th Cir. 1986)), *cert. denied*, 131 S. Ct. 2920 (2011) .

"Since the RICO statute does not contain any provisions concerning the award of prejudgment interest, the district court ha[s] discretion as to whether to award such interest." *Abou-Khadra v. Mahshie*, 4 F.3d 1071, 1084 (2d Cir. 1993). An award of prejudgment interest

> should be a function of (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.

*Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 955 F.2d 831, 833-34 (2d Cir. 1992).

"[P]rejudgment interest should not be awarded if the statutory obligation on which interest is sought is punitive in nature." *Id.* at 834 (citing *Rodgers v. United States*, 332 U.S. 371, 374-76 (1947)). While the argument could be made that treble damages under RICO are punitive damages, courts have considered treble damages as compensatory damages in determining whether to award prejudgment interest. *See, e.g.*, *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1310 n.8 (7th Cir. 1987) ("Although there is some sense in which RICO treble damages are punitive, they are largely compensatory in the special sense that they ensure that wrongs will be redressed in light of the recognized difficulties of itemizing damages."); *Aetna Cas. Sur. Co. v. P&B Autobody*, 43 F.3d 1546, 1572 (1st Cir. 1994) ("It may reasonably be argued, however, that RICO damages are primarily compensatory in nature, and thus prejudgment interest was properly awarded.").

In light of the foregoing, the court finds it appropriate to award Plaintiffs prejudgment interest on the entire treble damages amount. The court finds that the remedial nature of RICO supports granting prejudgment interest. *See Boyle v. United States*, 556 U.S. 938, 944 (2009) (noting RICO's remedial purposes). Furthermore, the court agrees with the reasoning of the First and Seventh Circuit Courts of Appeals that treble damages are compensatory rather than punitive in nature. *See Liquid Air Corp.*, 834 F.2d at 1310 n.8; *Aetna Cas. Sur. Co.*, 43 F.3d at 1572. Thus, the court shall award prejudgment interest on the entire treble damages amount from December 3, 2009, the date Plaintiffs filed the Complaint, until the date of judgment at the current statutory rate pursuant to 28 U.S.C. § 1961(a). *See Sheehan v. Guardian Life Ins. Co.*, 372 F.3d 962, 969 (8th Cir. 2004) (upholding the district court's calculation of prejudgment interest using the rate established in 28 U.S.C. § 1961(a)).

### 4. *Postjudgment interest*

Plaintiffs argue that they are entitled to postjudgment interest pursuant to the federal statute. "Interest shall be allowed on any money judgment in a civil case recovered in a

district court." 28 U.S.C. § 1961(a). Thus, the court shall award postjudgment interest on the entire treble damages amount from the date of judgment at the current statutory rate pursuant to 28 U.S.C. § 1961(a).

### 5. *Attorney's fees and costs*

Plaintiffs argue that they are entitled to their reasonable attorney's fees and costs under RICO. Pursuant to RICO, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter . . . shall recover . . . the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). Plaintiffs state that they will make a subsequent fee application following judgment in this matter. Thus, the court shall award Plaintiffs their reasonable attorney's fees and costs after reviewing any fee application Plaintiffs wish to file.

### 6. *Collateral estoppel in bankruptcy*

Plaintiffs request that the court explicitly state in its order that "the [c]ourt's decision shall have collateral estoppel effect in any subsequent bankruptcy proceeding." Damages Brief at 10. Because there is no bankruptcy proceeding currently pending, the court declines to determine at this stage whether this decision would have collateral estoppel effect in any subsequent bankruptcy proceeding. The determination of whether this damages award would be nondischargeable is best left to the bankruptcy court in the event that Seibert files for bankruptcy in the future. *Cf. Tremaine v. Downs*, No. 2:04-cv-151-FtM-29SPC, 2007 WL 865557, at *1 (M.D. Fla. Mar. 21, 2007) ("Plaintiffs seek to have the Court specifically find that any award of damages would be non-dischargeable in bankruptcy. As plaintiffs are essentially seeking an advisory opinion in the event that defendant files for bankruptcy, the Court will not make such a finding, or interfere pre-petition with the administration of a bankruptcy filing.").

## B. *Damages for State Law Claims*

Plaintiffs assert that their "damages claimed under their RICO counts subsume the

10

damages claimed under the various state law counts" and further state that, if the court "issues a default judgment on damages pursuant to [Federal Rule of Civil Procedure] 55(b)(2) on . . . Plaintiffs' RICO counts against Seibert and awards to . . . Plaintiffs all of the damages sought thereunder, the [c]ourt need not undertake any further analysis of . . . [P]laintiffs' state law counts for the purposes of determining damages." Damages Brief at 4-5 (citing *Holmberg v. Morrisette*, 800 F.2d 205, 209 (8th Cir. 1986)). Because the court has awarded Plaintiffs their requested RICO damages, the court shall not award any damages for Plaintiffs' state law claims.

## IV. CONCLUSION

In light of the foregoing, the Motion for Default Judgment (docket no. 255) is **GRANTED**. The Clerk of Court is **DIRECTED** to **ENTER JUDGMENT** in favor of Plaintiffs and against Seibert in the amount of **$12,176,735.22**, with prejudgment interest from December 3, 2009, until the date of judgment at the current legal rate pursuant to 28 U.S.C. § 1961(a), postjudgment interest at the current legal rate pursuant to 28 U.S.C. § 1961(a) and, once approved by the court, such reasonable attorney fees and costs as Plaintiffs demonstrate in their subsequent fee application.

**IT IS SO ORDERED**.

**DATED** this 24th day of October, 2012.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA